(No. 54168.—

ANTHONY CLEMMONS, Appellee, v. THE TRAVELERS INSURANCE COMPANY, Appellant.

*Opinion filed December 18, 1981.*

470

Eugene L. White and Phillip B. Lenzini, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant.

Allen, Clark & Cullinan, Ltd., of Peoria (Gary L. Clark, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The Travelers Insurance Company refused to defend Dennis Reed when Reed was sued in the circuit court of Peoria County by Anthony Clemmons for injuries received in an automobile accident. Clemmons had been a passenger in a car driven by Reed when it collided with another automobile. The car Reed was driving was insured by Travelers and owned by the American National Red Cross. A default judgment was entered against Reed; Clemmons then sued Travelers to collect the judgment from it. The circuit court granted summary judgment to Clemmons,

holding that Travelers' failure to defend Reed estopped it from denying that its policy coverage extended to Reed's accident. The appellate court affirmed (88 Ill. App. 3d 201), and this court granted leave to appeal pursuant to Rule 315 (73 Ill. 2d R. 315).

A chronology of the events in this case begins with the accident in the early morning hours of August 26, 1975, in which Clemmons was injured. Dennis Reed worked as a blood distributor for the Peoria chapter of the Red Cross on the night shift. The Red Cross left an automobile at his disposal for orders for blood which required immediate delivery. This car, driven by Reed and carrying Clemmons as a passenger, struck another vehicle after running a stop sign. The accident occurred at 12:12 a.m. during Reed's regular hours; however, Reed had received no orders that night requiring immediate delivery.

Within a week of the accident, Travelers advised Clemmons that it would pay his medical bills, up to $2,000, under the comprehensive automotive liability policy issued to the Red Cross. The policy obligated the insurer to pay all damages due to bodily injury arising out of the use of the Red Cross car; this coverage extended to those persons using the automobile with the named insured's permission.

Shortly thereafter, Travelers informed Clemmons that it was denying liability and would refuse to defend any suits against Reed. Travelers took the position that Reed had been operating the Red Cross automobile without permission and outside the scope of his employment and was therefore not covered by the policy.

On June 21, 1977, Clemmons filed a complaint charging Reed with negligent driving. The Red Cross was not included as a defendant. Soon after Reed was served on February 2, 1979, Travelers received a note from Reed, together with the summons served on him and a copy of the Clemmons complaint. On February 23, 1979, Travelers advised Reed in writing that it refused the tender of Reed's

defense and that he would have to answer the Clemmons complaint by March 2, 1979. Reed did not. On May 4, 1979, the court entered a default judgment against Reed for $100,000.

Clemmons then filed the present action against Travelers, seeking a declaration that the insurer had wrongfully refused to defend Reed and that it was therefore required to pay Clemmons the amount of his judgment against Reed. Travelers, contending Reed was not covered by the policy, denied that it had a duty to defend him. The circuit court's summary judgment in Clemmons' favor was for the full amount of his judgment plus interest.

I

The substantive issue is whether Travelers was estopped from denying that Reed was covered by the policy it issued to the Red Cross. Discussion of that problem must begin with *Murphy v. Urso* (1981), 88 Ill. 2d 444, decided this term, a case remarkably similar to this case in its facts and procedural course. Both are auto accident insurance cases involving attempts by injured passengers to collect from insurers default judgments imposed against the drivers of the vehicles in which they were injured. Travelers, the insurer in each case, issued a policy to the owner of the vehicle involved covering both the named insured and those using the vehicle with the permission of the named insured. In each case the driver of the vehicle was or had been employed by the named insured. In *Murphy* the named insured denied that the vehicle was being used within the scope of the employment or with its permission at the time of the accident. In this case the insurer advanced the same denial.

In each case the driver was served but did not appear. In each case Travelers offered the driver no defense. In each case a default judgment was entered against the driver which the plaintiff seized upon to garnishee Travelers under its insurance policy. In each case Travelers tried to

deny coverage but was held estopped in the circuit court by its failure to defend the putative insured.

*Murphy* restated the general rule of estoppel that applies when an insurance policy grants the insurer the right and duty to defend suits brought against the insured. When a complaint against the insured alleges facts within or potentially within the scope of the policy coverage, the insurer taking the position that the complaint is not covered by the policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 199.) If the insurer does not, it is later estopped from denying coverage in a suit to collect the judgment. *Murphy* addressed an exception to the general rule, explaining that when there is a conflict of interest between the insurer and the putative insured, the insurer may decline to take over the insured's defense itself, and may do so without making a reservation of rights or seeking a declaratory judgment on coverage, but the insurer remains liable for the costs of the putative insured's defense. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 451-52.

### A

Travelers' first argument is that it did not have a duty to defend Reed, the putative insured, because the complaint filed by Clemmons against Reed did not raise an issue of potential policy coverage. Clemmons alleged the time, location and cause of the accident, identified the Red Cross as the owner of the car involved and Reed as the driver. However, the problem, according to Travelers, is that Clemmons did not allege that Reed was driving the automobile with the permission of the Red Cross. (*Cf. Murphy v. Urso* (1981), 88 Ill. 2d 444.) Although a line of cases stretching back to *Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 606, and *Soukup v. Halmel* (1934), 357 Ill. 576, 579, holds that permission is essential to prove a cause of action under a policy like the one here, it is not

necessary for a complaint to allege permission in order to trigger the duty to defend. "If the complaint alleges facts within the coverage of the policy or *potentially* within the coverage of the policy the duty to defend has been established." (Emphasis added.) (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193.) Under the allegations of this complaint, there clearly was the possibility that Reed was driving his employer's automobile with permission, and whether that was a fact was a matter for later investigation by Travelers. Nothing in the complaint suggested that coverage did not exist.

Travelers, though, points to an unsworn accident report it knew of at the time it refused to defend in which Reed allegedly stated that he did not have permission to drive the Red Cross car at the time of the accident. This report does not justify a decision by Travelers to deny Reed a defense; the duty to defend must be determined solely from the language of the complaint and the policy. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 161.) But beyond that, the report should not have been given credence because, as a layman, Reed was probably unaware of the expansive view of permission Illinois law has taken. This court has held that a deviation from the authorized use does not terminate the permission initially given by the named insured. (*Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 341; see also *Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, 530-31; *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 242.) Reed's accident report was not enough to dispel the potential for coverage raised by Clemmons' complaint.

### B

Travelers next contends that even if the complaint against Reed raised a potential issue of coverage, it should not have triggered the duty to defend because Reed was not the named insured in the policy. Travelers argues that extending the duty to defend to putative insureds as well as

named insureds increases the insurer's risks far beyond the insurer's reasonable expectations at the time the policy was issued. It contends that where the duty to defend is involved, a distinction should be made between those cases raising an issue of policy exclusion and those in which the issue is policy inclusion.

The issue was addressed in *Murphy,* where we said: "An argument over exclusion from policy coverage is, for these purposes, really no different from an argument over inclusion." (88 Ill. 2d 444, 454.)

That conclusion remains sound, despite Travelers' fears that it will increase the cost of insurance. It must be remembered that Travelers, by agreeing to the "permission" loading clause in its policy, extended the insurance agreement to an unknown class of third-party intended beneficiaries—those driving with the permission of the named insured. The size of that class was limited only by the prudence of the named insured in extending permission to drive its automobile. (See *Cocos v. American Automobile Insurance Co.* (1939), 302 Ill. App. 442, 451.) While normally courts are hesitant to find inclusion for fear of extending coverage beyond the contemplation of the insurer and insured, Travelers' policy here already provided coverage far beyond its own control or ability to predict. (*Cf. Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 607; *Government Employees Insurance Co. v. Dennis* (1967), 90 Ill. App. 2d 356, 365.) To argue that, while the duty to pay may be so extended, the duty to defend should not be, is inconsistent. No such distinction appears in the policy.

Travelers finds the result, that the duty to defend extends to someone whom neither it nor the named insured contemplated, a stranger to the policy, absurd. That argument begs the question by assuming that the putative insured, Reed in this case, was driving without permission. When the insurer renounces its duty to defend in a case like

this, that question is yet to be finally determined.

Travelers points to *Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, for support of its claim that inclusions of insurance coverage should be treated differently than exclusions. But the question in *Graman* was not inclusion, but rather whether the complaint alleged potential coverage. *Graman* held that because the claims involved were not presented to the insurer within the time called for in the policy, there was no duty to defend. 87 Ill. App. 3d 896, 902.

## C

*Peppers* and *Thornton* announced a limited exception to the rule that where the putative insured is sued under a complaint alleging facts sufficient to raise a potential case of coverage, the insurer must provide the putative insured with a defense, must defend under a reservation of rights or must seek a declaratory judgment of coverage. That exception applies where there is a conflict of interest between the insurer and the putative insured, which absolves the insurer of its duty to take charge itself of the putative insured's defense. A description of the kinds of conflict of interest that may arise in these situations appears in *Murphy*. But this case is different from *Murphy;* the insured passenger here sued only the driver of the car, not the owner as well. This difference is critical because, without the owner as a party defendant, the insurer's loyalty is not torn, as it was in *Murphy,* between the conflicting interests of the owner and the insurer on the one hand and the driver on the other when permission is at issue.

Unlike *Murphy,* permission was not an issue here in the underlying suit against Reed. The only issue was the negligence of the driver. On this point the insurer and the driver did not have conflicting interests; each wanted to show that there had been no negligence and thus put an end to Clemmons' claim.

If Clemmons could show negligence, the uneasy con-

tractual alliance between Travelers and the driver would eventually disintegrate. But any conflict between the two could only come in the future; nothing that Travelers could do in the underlying suit against Reed would affect the later dispute over policy coverage about permission. Travelers could not manipulate the proceedings in the Clemmons-Reed suit to lay the groundwork for later taking the position that Reed was driving without permission. Evidence relating to permission would be irrelevant in the underlying suit.

As wary of Reed as it might be, therefore, Travelers had a duty to defend him in the underlying suit brought by Clemmons. If Travelers wanted to preserve its right to later contest permission, it had the choice of defending under a reservation of rights or seeking a declaratory judgment of no coverage. By doing neither, Travelers was estopped from later denying coverage when Clemmons, standing in Reed's shoes, asked it to pay the judgment in the underlying suit.

The general rule of estoppel is equitable in nature. In this context, its roots lie in the theory that because the insurer breached one of its duties under the contract of insurance (of which the putative insured is an intended third-party beneficiary), the insurer cannot later turn around and enforce another clause of the contract, to its complete protection. (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 197.) The court will not enforce the insurer's protections under the policy where the insurer failed to act equitably, that is, failed to defend under a reservation of rights or to bring a declaratory judgment action to determine whether there was coverage under the policy. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 159.) The circuit court was correct in finding Travelers estopped.

## II

Travelers also raises a procedural challenge. After summary judgment was entered in the garnishment action, Travelers moved to set aside the judgment. The basis for its

collateral attack upon the default judgment was that service upon Reed in that suit was improperly obtained. Travelers pointed out that the return of service, which stated that Reed had personally been served, was not in affidavit form and that it was signed by one of Clemmons' attorneys. Travelers argued that because of these shortcomings no personal jurisdiction had been obtained over Reed and the default judgment was therefore void. The appellate court affirmed the circuit court's denial of the motion, holding that service by an attorney and failure to file an affidavit were not egregious enough faults to render the default judgment void.

Travelers now argues that the appellate court denied it the opportunity to litigate the issue of service. While no evidence was presented on the issue in the lower court, that was because Travelers did not raise the issue until it filed its motion to vacate the summary garnishment judgment. Even assuming that the allegations on which its motion to set aside the garnishment judgment was based were true, the default judgment in the Reed suit was not void. It was therefore proper to decline to reopen the garnishment judgment.

Travelers, as garnishee, had the right to attack the underlying default judgment on the ground that the court had never obtained personal jurisdiction over Reed. (*First National Bank v. Hahnemann Institutions of Chicago, Inc.* (1934), 356 Ill. 366, 370.) To do that it would have to present some evidence to impeach the return already in the court record. The normal way would be either through an affidavit or personal testimony of the defendant, but Travelers offered neither. Instead, Travelers argued only that the return should be ignored simply because it was not in proper affidavit form, as required by section 13.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 13.1(1)). However, the affidavit requirement is a matter of convenience. Its purpose is similar to that of the notarized

attestation clause of a witness to a will. If the return is challenged, the affidavit of return is powerful evidence that can be overcome only by a contradictory affidavit or personal testimony.

The affidavit requirement thus makes it harder for an attack upon the return of a private process server to succeed, in much the same way as does the presumption that a sheriff's return is proper. (See *Marin v. Grimm* (1976), 37 Ill. App. 3d 979, 981.) But failing to comply with the affidavit requirement does not necessarily render the return useless or the service void. ( *(Cf. In re Sexton* (1981), 84 Ill. 2d 312, 320.) What is significant here is that Travelers acknowledged receipt of a summons which had been forwarded to it by Reed and which showed a date of service. Thus, any attack it made upon Reed's service could not have succeeded, and the defect in form was properly disregarded.

Travelers argues that the return should have been given no credence because it was made by Clemmons' attorney. Thus, with nothing in the record to show service, the court would have been without jurisdiction to enter the default judgment. Travelers' theory is that an attorney is not a "disinterested person" and so is ineligible to serve process. The formulation comes from a line of cases decided before the Civil Practice Act. (*People ex rel. Lafferty v. Feicke* (1911), 252 Ill. 414, 417; *Tallon v. Schempf* (1873), 67 Ill. 472, 473.) That act requires only that a private process server be 18, be appointed by the court and not be a party to the action. (Ill. Rev. Stat. 1979, ch. 110, par. 13.1(1).) The attorney here satisfied those requirements and so his service was acceptable.

So far as the propriety of Clemmons' attorney acting as a process server is concerned, the Code of Professional Responsibility provides that an attorney should not seek employment in a matter in which the attorney might have to appear as a witness (73 Ill. 2d R. 5—101(b)). It is not

necessary to consider all the consequences of the attorney acting in this case as process server. Whatever those consequences may be for the attorney, including perhaps his disqualification as attorney for Clemmons in the event his testimony is called for by either party, they would not affect the validity of the service upon Reed.

Travelers' motion to set aside the summary judgment in the garnishment action on the ground of the propriety of service on Reed did not include sufficient allegations to establish that the default judgment was void. The circuit court properly denied the motion.

III

The default judgment against Reed was obtained with jurisdiction, and Travelers' refusal to defend Reed in that action was wrongful. It was proper to enter summary judgment in Clemmons' favor in the garnishment action.

*Judgment affirmed.*