NO. 4-98-0078

November 4, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

VERNA B. CHANDLER and JAMES E. CHANDLER, )   Appeal from

Plaintiffs,                    )   Circuit Court of

     v.                             )   Champaign County

OTIS L. DOHERTY,                         )   No. 88L1218

Defendant,                     )

and                            )

VERNA B. CHANDLER and JAMES E. CHANDLER, )

Garnishors-Appellees,          )

v.                             )

AMERICAN FIRE & CASUALTY COMPANY,        )   Honorable

Garnishee, Citation Respondent-)   John G. Townsend,

Appellant.                     )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

American Fire & Casualty Company (American Fire) re­

fused to de­fend Otis Doherty when Doherty was sued in the circuit court of Cham­paign County by Verna and James Chandler for inju­

ries re­ceived in an automobile accident.  Verna was driving the Chandlers' car when it collided with the car driven by Doherty.  Doherty had an auto insurance policy with American Fire.  A de­

fault judgment was entered against Doherty.  The Chandlers then sued American Fire to collect the judgment.  The trial court granted summary judgment to the Chandlers, holding American Fire breached its contract with Doherty by failing to defend the Chandlers' com­plaint, which alleged facts raising the potential for coverage.  The trial court ruled ex­trinsic facts are not al­

lowed to de­feat the duty to defend where American Fire did not file a de­claratory judgment action.  

Ameri­can Fire appeals, contending all parties involved 

knew
 the car being driven by Doherty was not covered under its policy, thus absolv­ing it from a duty to defend.  Further, Amer­i­

can Fire contends even if it did have a duty to defend, the trial court's award of interest on the judgment obtained by the Chan­

dlers from the date that judgment was rendered is error.  We affirm.

I.  BACKGROUND

In 1984, Doherty purchased a new Chevrolet Celebrity and obtained insurance with American Fire from the Facer agency in Rantoul.  American Fire issued an automobile liability policy for the Chevrolet with Doherty as named insured with an effective policy period of March 28, 1987, to March 28, 1988, with single limits of liability of $300,000 for each accident.  The policy included an exclusion from coverage, which stated:

"B.  We do not provide Liability Coverage 

     for the ownership, maintenance or use

     of:

 * * * 

 2.  Any vehicle, other than your covered 

     auto, which is:

     a.  owned by you; or

     b.  furnished or available for your 

    regular use."

In 1986, Doherty received a 1962 Volkswagen automobile as a gift.  He replaced the Volkswagen's body with the replica fi­berglass body of a 1927 Bugatti; referred to by all parties as  "the replicar."  Doherty drove the replicar only for recreation­al purposes such as in parades or for display.  

Doherty went to the Facer agency prior to May 1987 to see about adding the replicar to his policy with American Fire.  He was told American Fire would not insure the car because it was modified.  Doherty did not obtain coverage for the replicar else­

where.  He ultimately succeeded in obtaining in­sur­ance with Amer­

ican Fire for the replicar three months 
after
 the acci­dent with the Chandlers.

On May 17, 1987, while Doherty was driving the replicar, he was involved in a collision with a car driven by Verna Chandler.  Doherty reported the accident to Facer short­ly afterward and was told the replicar was not on his poli­cy with Amer­ican Fire.  

On November 15, 1988, the Chandlers filed an action seeking damages from Doherty for personal injuries they allegedly sustained in the accident.  In their complaint, the Chandlers alleged Doherty negligently operated "his motor vehicle," thereby causing the collision.  Notice of the action was given to Facer on December 20, 1988, in a letter from counsel for Doherty, who re­quested a defense from American Fire.  In that letter, counsel stated if he did not receive a response to the tender within 10 days he would assume coverage was being declined and he would file a declaratory action against American Fire.  

On December 23 Facer forwarded the letter to American Fire.  American Fire responded on March 3, 1989, by advising Doherty his policy indicated the 1962 Volkswagen was not added to the policy until August 7, 1989, several months after the date of loss and "unfortunately we will be unable to provide you any coverage for this accident."  Doherty's counsel was also advised there was no coverage for the replicar.  Neither Doherty nor American Fire filed a declaratory judgment action regarding Amer­

ican Fire's coverage.

Doherty did not appear and defend the Chandlers' law­suit.  A default judgment on liability only was entered against him on November 30, 1990.  Notice of default was served upon Doherty on April 3, 1991.  On April 8, Doherty sent a letter to American Fire with a copy of the notice of default and a let­ter he re­ceived from the Chandlers' attorney advising him it appeared American Fire was wrongfully refusing to defend him.  American Fire never responded to Doherty's request for represen­tation.  

On August 19, 1993, a jury awarded the Chandlers damag­

es in the amount of $1,618,678 and judgment was entered against Doherty in that amount.

On December 16, 1993, counsel for Doherty demanded American Fire pay the judgment.  American Fire responded on March 2, 1994, advising there would be no payment and stating the replicar was not an insured vehicle.  

In later citation proceedings, Doherty assigned any rights he had under the American Fire policy to the Chandlers on October 4, 1994.  On August 21, 1995, the Chandlers filed their amended com­plaint for citation and affidavit for order of gar­

nish­ment against American Fire.  American Fire initially answered the amended complaint on February 14, 1996.  Both American Fire and the Chandlers filed motions for summary judgment and American Fire filed a motion for leave to withdraw its answer and a motion to dismiss.

After an exchange of memoranda supporting their respec­

tive summary judgment motions, counsel for the Chandlers and for Amer­i­can Fire argued their motions before the trial court on October 31, 1996.  In a memorandum opinion, the trial court grant­ed par­tial sum­ma­ry judg­ment for the Chandlers on December 1, 1997, finding "American breached its contract with Doherty by failing to defend when the complaint alleged facts raising the potential for coverage."  The trial court denied the Chandlers'  motion for summary judgment in respect to their cause of action for bad faith.  The court also denied American Fire's summary judgment motion and its motion to dismiss.  The court en­tered a judg­ment order Janu­ary 17, 1998, in favor of the Chan­dlers in the amount of the $300,000 policy limit plus statutory interest at 9% on the sum of $1,618,678 from August 19, 1993, the date the judg­

ment was en­tered against Doherty.

The trial court found no reason to delay enforcement or appeal of its order pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  Timely notice of appeal was filed on Janu­ary 27, 1998.

American Fire argues it had no duty to defend Doherty as a matter of law because the car he was driving in the accident with the Chandlers was not an insured vehicle under the policy and there was a policy exclusion specifically addressing that circumstance.  Further, American Fire contends Doherty, as well as American Fire, knew this was the case at all relevant times. 

Thus, it was error for the trial court to grant summary judgment to the Chandlers.

II.  ANALYSIS

A trial court's grant of summary judgment is subject to a 
de
 
novo
 review upon appeal.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992);  
Sandstrom v. De Silva
, 268 Ill. App. 3d 932, 935, 645 N.E.2d 345, 347 (1994).  Under Illi­nois law an in­sured con­tracts for and has a right to expect two sepa­rate and distinct duties from an insur­er:  (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found le­

gally liable for the occurrence of a covered risk.  
Conway v. Country Casualty Insur­ance Co.
, 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247 (1982); 
Empire Fire & Ma­rine Insur­ance Co. v. Clarendon Insur­ance Co.
, 267 Ill. App. 3d 1022, 1026, 642 N.E.2d 790, 793 (1994).  The duty to defend an in­sured is much broader than the duty to indemnify.  
Crum & Forster Man­ag­ers Corp. v. Reso­lu­tion Trust Corp.
, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073, 1079 (1993).  In Illi­nois, an in­surer may be re­quired to defend its insured even when there will ulti­mately be no obliga­tion to in­

demnify.  
Zurich Insurance Co. v. Raymark Industries, Inc.
, 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163 (1987).   

Under Illinois law, a liabili­ty insurer's duty to de­

fend arises when the insured tenders de­fense of a suit against him that alleges facts which, when taken as true, raise the po­

ten­tial for coverage occurring during the ef­fective policy peri­

od.  
Em­pire Fire & Marine
, 267 Ill. App. 3d at 1026, 642 N.E.2d at 793.  It is the law of this state that in de­ter­min­ing wheth­er it has a duty to de­fend a suit, an insurer is 
limited
 to com­par­

ing the bare alle­gations of the com­plaint with the face of the policy of in­sur­ance.  
Crum & Forster
, 156 Ill. 2d at 393, 620 N.E.2d at 1079; 
Outboard Ma­rine
, 154 Ill. 2d at 107-08, 607 N.E.2d at 1212; 
United States Fidelity & Guaranty Co. v. Wilkin Insu­la­tion Co.
, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991); 
Thornton v. Paul
, 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339 (1978); 
Maryland Casual­ty Co. v. Peppers
, 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28 (1976).  

The threshold a complaint must meet to present a claim for potential coverage, and thereby raise a duty to defend, is  mini­mal.  
West Bend Mutu­al In­surance Co. v. Sundance Homes, Inc.
, 238 Ill. App. 3d 335, 337-38, 606 N.E.2d 326, 328 (1992).  Any doubts about potential coverage and the duty to defend are to be re­solved in favor of the 
insured
.  
West Bend
, 238 Ill. App. 3d at  338, 606 N.E.2d at 328.  The duty to de­fend is not an­nulled by the knowl­edge on the part of the insur­er the allega­tions are untrue or incor­rect or the true facts will ulti­mately ex­clude cov­er­age.  
Thornton
, 74 Ill. 2d at 144, 384 N.E.2d at 339.  

In this case, the complaint alleged Doherty was driv­ing "his motor vehi­cle" at the time of the acci­dent with the Chan­

dlers.  Ameri­can Fire's policy covers Doherty when he is driving his 1984 Chevro­let Ce­lebrity.  From the alle­gations of the com­

plaint alone, there is 
potential
 cover­age for Doherty for this claim, which all parties agree oc­curred dur­ing the ef­fec­tive policy period.  Under es­tab­lished pre­ce­dent in Illi­nois, Amer­ican Fire owed a duty to de­fend Doherty against the claims of the Chan­dlers.  

American Fire points out there is no Illinois case squarely on point with the issue presented here and con­tends the gen­er­al rule is not applicable in this situation.  Amer­i­can Fire contends it should not be re­quired to de­fend its in­sured when both the in­sured and the in­surer know there is no coverage.  In sup­port of its posi­tion it cites a federal cir­cuit court case from Florida with an almost identical fact pat­tern.  
Rowell v. Hodges
, 434 F.2d 926 (5th Cir. 1970).  In 
Rowell
, the insured had insured only a 1958 Cadillac but was driv­ing a 1955 Cadillac when he was involved in an automobile acci­dent.  The complaint alleged the insured was driving "an automo­bile" and the insurer deter­

mined by retaining an indepen­dent adjusting firm the auto in­

volved was the 1955 Ca­dil­lac that it did not in­sure.  The court in 
Rowell
 found it to be illogical to re­quire the in­surer to de­

fend and then prove up what it had al­ready in­contro­vertibly es­

tab­lished, the identi­ty of the vehi­cle in­volved in the acci­dent and the fact it was not insured, and then hand the de­fense of the action back to the in­sured.  
Rowell
, 434 F.2d at 929.

The 
Rowell
 decision is not pre­ce­dent in Illi­nois, but American Fire contends Illinois law itself allows for the use of ex­trin­sic evidence by an insurance company to establish an in­

sured's ac­tions fall outside of its coverage.  First, American Fire contends it is not the law in Illinois that a duty to defend is owed where the complaint on its face does not pre­clude such a duty but, rather, there is no duty to defend where a complaint does allege facts stating how an insurance policy ap­plies.  In sup­port of this posi­tion, Amer­i­can Fire cites 
Tapp v. Wrightsman-

Musso In­surance Agency
, 109 Ill. App. 3d 928, 441 N.E.2d 145 (1982).  

In 
Tapp
, the insurer insured a specific piece of prop­

erty in the town of Virden and the trucking business lo­cat­ed on it.  
Tapp
, 109 Ill. App. 3d at 931, 441 N.E.2d at 147.  The com­

plaint alleged injuries occurred on a piece of property near Taylorville while the plaintiff was helping the insured dismantle and remove a building located there.  
Tapp
, 109 Ill. App. 3d at    929, 441 N.E.2d at 146.  The complaint did not allege 
how
 this action was in any way related to the property in Virden or the insured's trucking busi­ness.  Therefore, a defense was denied.  The court held the com­plaint needed to give some indication there was a reason to be­lieve the insurance policy was related to the facts alleged, which it did not do.  
Tapp
, 109 Ill. App. 3d at 933, 441 N.E.2d at 149.  In other words, the court in 
Tapp
 actu­

ally set forth the same pro­position stated earlier:  the com­

plaint must allege facts supporting a 
potential
 for coverage under the poli­cy.  In 
Tapp
, the complaint, on its face, did not set forth facts sup­port­ing potential coverage while in the case before us, facts supporting potential coverage were alleged.     

   Other cases cited by American Fire in sup­port of its posi­tion that extrinsic evidence may be of­fered by an in­surance com­pany to determine coverage arise from de­clar­atory judg­ment proceedings, an option open to Ameri­can Fire in this case, but one it chose not to pur­sue.  See 
State Farm Fire & Casualty Co. v. Shelton
, 176 Ill. App. 3d 858, 867, 531 N.E.2d 913, 919 (1988); 
Fi­del­i­ty & Casu­al­ty Co. v. Envirodyne Engi­neers, Inc.
, 122 Ill. App. 3d 301, 304-05, 461 N.E.2d 471, 473-74 (1983).

Another case cited by American Fire, 
J. Roth Build­ers, Inc. v. Aetna Life & Casu­al­ty Co.
, 151 Ill. App. 3d 572, 503 N.E.2d 782 (1987), did allow the use of extrinsic evidence, a jury's finding in the underlying suit the insured had acted wil­

ful­ly and wan­ton­ly, in­ a gar­nish­ment pro­ceed­ing against the in­

sur­ance com­pa­ny after a ver­dict was en­tered against the in­sured, but there is no indi­ca­tion in the opinion whether the insurance com­pany had re­fused to de­fend the insured or wheth­er the company may have de­fended under a reserva­tion of rights and then re­fused to pay the judg­ment, another option available to but not chosen by Amer­i­can Fire in the in­stant case.  It is im­pos­si­ble to tell if 
J. Roth Build­ers
 actually sup­ports Ameri­can Fire's posi­tion.

A final case cited by American Fire in support of its posi­tion allowing the use of extrinsic evidence to determine coverage is 
Clemmons v. Travelers Insurance Co.
, 88 Ill. 2d 469, 430 N.E.2d 1104 (1981).  In 
Clemmons
, the question was whether the driver of the insured's automobile at the time of the acci­dent was a per­missive driver.  The complaint did not allege the driver had the insured's permission to drive the insured automo­

bile and the acci­dent re­port con­tained a state­ment from the driv­

er stating he did not have the permis­sion of the insured at the time of the acci­dent.  
Clemmons
, 88 Ill. 2d at 475-76, 430 N.E.2d at 1107-08.  The supreme court found the accident report did not justify a deci­sion by the in­surer to refuse to defend the insured as the duty to defend was to be determined from the lan­guage of the complaint and the poli­cy only.  
Clemmons
, 88 Ill. 2d at 476, 430 N.E.2d at 1108.  The court's language after that stat­ing the report was "not enough to dispel the potential for cover­age raised by Clemmons' complaint" (
Clemmons
, 88 Ill. 2d at 476, 430 N.E.2d at 1108) because it was a layman's opinion of permis­sive use was 
dicta
.  Contrary to the as­ser­tions of Amer­i­can Fire, the 
Clemmons
 court did not find stron­ger ex­trinsic evi­dence under a dif­fer­ent set of cir­cum­stanc­es could serve to dispel the poten­

tial for coverage in a com­plaint.        

American Fire argues even if it did owe a duty to de­

fend based upon the allegations of the complaint, it was not estopped from asserting policy defenses supported by extrinsic evidence in the gar­nish­ment proceedings.  However, the cases American Fire cites do not support its argument.  These cases stand for the proposition an in­sur­er can never be estopped from rais­ing poli­cy defenses where it 
actively
 seeks to adjudi­cate its rights and duties by seeking a summary judgment in a de­clar­a­to­ry judg­ment ac­tion whether filed by the insured or the insurer.  See 
J.A. Jones Con­struction Co. v. Hart­ford Fire In­surance Co.
, 269 Ill. App. 3d 148, 151-52, 645 N.E.2d 980, 983 (1995); 
Sears, Roe­

buck & Co. v. Sene­ca Insurance Co.
, 254 Ill. App. 3d 686, 694, 627 N.E.2d 173, 178 (1993); 
Village of Melrose Park v. Nautilus Insurance Co.
, 214 Ill. App. 3d 864, 867, 574 N.E.2d 198, 199 (1991).  

In Illi­nois where an in­surer has a duty to de­fend but unjus­tifi­ably refuses to do so and fails to file a de­clar­a­to­ry action to determine its obligations before trial of the origi­nal tort action, the in­sur­er is es­topped from as­sert­ing any poli­cy ex­clu­sions or de­fens­es in a later garnishment ac­tion by the in­

sured or a judgment creditor.  
Mur­phy v. Urso
, 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082 (1981); 
Thornton
, 74 Ill. 2d at 145, 384 N.E.2d at 340.  In this case, American Fire did not seek to adju­dicate its rights and duties under the policy in a declar­

atory judgment action and Doherty did not file such an action either.  American Fire could have filed a declaratory judgment action before trial of the Chandler lawsuit and ob­tained a judi­cial determination on coverage.  The declaratory action would have included the participation of the Chandlers, who might well have disputed the lack of coverage with greater motivation than Doherty.  

Illinois courts have consistently determined the tort claimant in an underlying action is a necessary party to a de­

claratory judgment action brought to determine insurance coverage for that claim.  
M.F.A. Mutual Insurance Co. v. Cheek
, 66 Ill. 2d 492, 495, 363 N.E.2d 809, 811 (1977); 
Society of Mount Carmel v. National Ben Franklin Insurance Co.
, 268 Ill. App. 3d 655, 661, 643 N.E.2d 1280, 1285 (1994); 
Flashner Medical Partnership v. Marketing Management, Inc.
, 189 Ill. App. 3d 45, 53, 545 N.E.2d 177, 183 (1989).  Courts have based the determination the claim­

ant in the underlying action is a necessary party on the idea such claimants have a "substantial right in the viability of the policy" (
Cheek
, 66 Ill. 2d at 495, 363 N.E.2d at 811), or they are "a real party in interest to the liability insurance con­

tract" whose rights "vest at the time of the occurrence giving rise to his injuries."  
Reagor v. Travelers Insurance Co.
, 92 Ill. App. 3d 99, 103, 415 N.E.2d 512, 514 (1980).  Courts have noted a declaration of noncoverage would eliminate a source of funds to the injured party.  
Flashner Medical Partnership
, 189 Ill. App. 3d at 54, 545 N.E.2d at 183.  American Fire is es­topped from rais­ing poli­cy de­fens­es in the garnish­ment pro­ceed­ings.

Illinois law is clear on this subject.  We de­cline American Fire's invitation to change the law.  The Chandlers' com­plaint al­leged Doherty was driv­ing his automo­bile when his negli­gent ac­tions caused them to be in­jured.  The in­sur­ance poli­

cy issued by American Fire cov­ers an auto­mobile owned by Doherty and his lia­bility for per­sonal inju­ries to oth­ers while driving it.  There was poten­tial cover­age and American Fire cannot pre­

vail here by arguing everyone knew there was no coverage.  First, we do not recognize the legal efficacy of an argument suggesting everyone knew something, when the very purpose of some litigation is to resolve a dispute over who knew what and whether what they thought they knew is actually true.  Certainly Doherty and his attorney thought there might be coverage because they asked Amer­

ican Fire to defend the lawsuit and later to pay the judgment.  Further, Doherty's knowledge or belief as to coverage is not determinative on the issue of whether American Fire had a duty to defend.  Amer­ican Fire un­jus­ti­fi­ably re­fused to de­fend Doherty.  

When an insurance company unjustifiably refuses to defend its insured, the measure of damages is (1) the amount of the judg­ment against its insured up to the policy limits un­less the in­surer was guilty of negligence, fraud or bad faith in which case there is liability for the full judgment; (2) ex­penses in­

curred by the insured in defending the suit; and (3) any addi­

tion­al damages traceable to its refusal to defend.  
Conway
, 92 Ill. 2d at 396-98, 442 N.E.2d at 248-49.  

In this case, the trial court entered judgment for the $300,000 policy limits plus interest on the 
full
 amount of the judgment.  If it owed a defense to Doherty, American Fire does not contest the measure of damages except it con­tends it was error to as­sess in­ter­est from the date the judg­ment was en­tered and argues the inter­est should run only from the date the summary judgment was en­tered against it.  Ameri­can Fire's policy specifi­

cally pro­vided for postjudg­ment interest as fol­lows:

"
Supplementary Payments

In addition to our limit of liabil­ity, we will pay on behalf of a covered person:

* * *

3.  Interest accruing after judg­ment is en­

tered in any suit we defend.  Our duty to pay interest ends when we offer to pay part of the judgment which does not exceed our limit of liabil­ity for the coverage."

American Fire argues, under its policy, actual defense of the underlying lawsuit is a condition precedent to cov­erage for postjudgment interest.  Because it did not par­tici­pate in the underlying lawsuit, American Fire contends there is no coverage for any postjudgment interest assessed against Doherty.  

We need not deal with that issue here, howev­er, as Amer­i­can Fire did not raise it in the trial court.  An issue not presented to the trial court is waived in nonjury civil cas­es. 
In re Marriage of Mohr
, 260 Ill. App. 3d 98, 101, 631 N.E.2d 785, 787 (1994); 
In re Marriage of Harper
, 191 Ill. App. 3d 245, 247, 547 N.E.2d 574, 575-76 (1989).  Is­sues not raised in the trial court are not to be con­sid­ered for the first time on appeal even in summary judg­ment cases.  
Smith v. Ashley
, 29 Ill. App. 3d 932,  934, 332 N.E.2d 32, 33 (1975); 
Ander­son "Safe­way" Guard Rail Corp. v. Cham­paign Asphalt Co.
, 131 Ill. App. 2d 924, 929, 266 N.E.2d 414, 418-19 (1971).   

The Chan­dlers spe­cifically asserted their right to judgment in­terest from the date of the underlying judgment against Doherty in their com­plaint for cita­tion and order of garnishment, their motion for summary judg­ment, their memorandum in support of sum­mary judgment, and in oral argu­ments on the mo­

tion.  American Fire never addressed the issue in its re­sponse to the Chandlers' mo­tion for summary judg­ment, its cross-motion for summary judgment, its memorandum in support of its cross-motion, or even in response to the arguments of Chan­dlers' counsel at the oral arguments on the motions.  Instead, American Fire confined itself to arguing about the ap­plicability of inter­est due to the Chandlers' allega­tions of bad faith, alle­gations that American Fire argued were not properly part of a garnish­ment action.

American Fire addressed the issue of whether inter­est should have been assessed from the date judgment was entered against Doherty only in its appellate briefs.  The issue has been waived.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, J., concurs.

McCULLOUGH, J., dissents.

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent.

Where there is no policy to enforce, there is no duty to defend.  The allegations of Chandlers' complaint carefully avoid describing in detail the nature of the vehicles involved in the collision, whether by make, model, description, or serial number.  There is nothing in the complaint from which coverage of the Doherty vehicle involved in the collision by American Fire and Casualty Company can be inferred.

Doherty had one vehicle insured by American Fire & Casualty, but the vehicle that was involved in the collision was not on the policy.  A partial summary of Doherty's testimony is helpful.  He purchased a new Chevrolet Celebrity in 1984 and obtained in­surance on the Celebrity from Facer.  The 1962 Volks­

wag­en was given to him about a year before the accident.  He was also given the Bugatti body.  He worked on the car for about a year, finish­ing it in about December 1986.  In response to wheth­

er he went to Facer or any other agency to get insurance, he answered, "I asked them about it one time."  Doherty does not remember when he talked to Facer.  As to his reason for going to Facer, he had the other car insured at Facer and "I might as well keep both in­surance policies with the same company."  As to what happened:

"A.  They didn't want to insure it.  She said it was a modified car and they didn't have something--I don't remember.  It was some kind of excuse.

Q.  In other words, they didn't have to write off to somebody and get back to you and say they wouldn't cover it?

A.  No.

Q.  They told you that that day?

A.  Yes."

As to the vehicle involved in the accident, Doherty testified he

"got nine hundred and some dol­lars worth of damages *** [and] I got an estimate of re­

pairs and I sent the estimate to the insur­

ance company, her insurance company, and they gave me a check for the amount, after inves­

ti­ga­tion.

Q. You didn't make any claim for reim­

bursement from your own insurance company?

A. No."

The majority states the analysis should not go beyond the complaint.  The cases cited by the majority do not support that conclusion.  

"It is now well-established law that, in determin­ing whether an insurer has a duty to defend its in­sured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance poli­cy."  
Crum & Forster Managers Corp.
, 156 Ill. 2d at 393, 620 N.E.2d at 1079. 

If the subject policy is compared to the complaint in the under­

ly­ing suit, there is clearly no duty to defend.  The complaint merely alleges that Doherty was operating "his motor vehicle."  A person may own several motor vehicles, all insured by different companies.  Doherty also made reference to another vehicle he owns, apparently received from his parents.  Query, if insurance was had on this vehicle with a different company, would that company also have a duty to defend?  The fact that Doherty was operating one of his vehicles does not give rise to a duty to defend by American Fire & Casualty.  The failure in the com­

plaint, not specifical­ly identify­ing the motor vehicle operated by Doherty at the time of the collision, gives rise to the ap­plication of the exception to the general rule, as announced in 
Thornton
, 74 Ill. 2d at 151, 384 N.E.2d at 342.  In 
Thornton
, the supreme court discussed the brevity of the allega­tions of the complaint and the difficulty in determin­ing the rights of the insured and the insurer from such allegations (
Thornton
, 74 Ill. 2d at 160-62, 384 N.E.2d at 347-48) and concluded, "if the gener­

al rule is to be applied, there should be sufficient factual allega­tions in the complaint to make the determination alluded to in 
Maryland Casualty Co. v. Peppers
" (
Thornton
, 74 Ill. 2d at 162, 384 N.E.2d at 348).  
Maryland Casualty Co.
 dealt with the conflict of interest that may arise when an insurer undertakes to defend an action in which one cause of action or theory of recov­

ery may raise an inference of coverage, but others may not.  
Maryland Casualty
, 64 Ill. 2d at 193-94, 355 N.E.2d at 28.

This case provides a fact situation very similar to the fact situation presented in 
Maryland Casualty
, ex­cept that the vague allegations of Chandlers' complaint against Doherty prevent the type of analysis that could resolve the cov­erage issue.  As a result, American Fire & Casualty should have been allowed to present, and the trial court should have consid­ered, evidence that the subject policy did not afford coverage in this case.

I agree with the statement in 
Tapp
 wherein this court stat­ed:

"Although case law does state that the lack of coverage must be absolutely clear when compar­ing the complaint with the policy for an insurer to refuse to defend with impunity, we believe this broad statement of law pre­

sumes that the complaint gives some indica­

tion there is a reason to believe the insur­

ance policy is relevant to the alleged facts."  
Tapp
, 109 Ill. App. 3d at 933, 441 N.E.2d at 149.

Similar to 
Tapp
, the allegations in the instant complaint give no indication what car owned by Doherty was involved in the acci­

dent, thereby alerting American Fire that there was potential coverage.  That Doherty "was operating his motor vehicle" is inadequate.

In 
Rowell
, 434 F.2d 926, a similar factual situation, the insured owned a 1958 Cadillac insured with North­west­ern Mutu­

al Insurance Company.  The insured also owned a 1955 Cadillac that was not insured by Northwestern.  The complaint alleged the owner was operating "an automobile."  In a subsequent garnishment ac­tion, the circuit court of appeals, while recognizing the gen­eral rule requiring the insurance company to defend, stated:

"[T]he general rule does not take into ac­

count the pos­sibility that a divergence may exist between the facts as alleged in the Petition and the actual facts as they are known to the insurer, and that the general rule does not apply where, as here, the un­

con­trovertible and indisputable facts, ascer­

tained by the insur­ance com­pany long before the action is com­menced and confirmed by its own insured, demonstrate that there never was any insur­ance coverage for the casualty al­

leged in the first place, and that, there­

fore, the refusal to defend does not consti­

tute a breach of con­tract but, on the con­

trary, is a justified refusal.

* * *

In a sense, to say here that the Gar­

nish­ee must gauge its obligation strictly by the pleading called a Complaint, and put blinders on, so to speak, to what it actually knows and has definitely ascertained, is some­what archa­ic, considering the nature of our present system of notice pleading."  
Rowell
, 434 F.2d at 929-30.

The reasoning in 
Rowell
 is sound.  The plaintiffs were not enti­

tled to summary judgment.