In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-2712

SHANNON HYLAND,

*Plaintiff-Appellee,*

*v.*

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:15-cv-01264-JES-JEH — **James E. Shadid**, *Chief Judge.*

_____

ARGUED FEBRUARY 22, 2018 — DECIDED MARCH 15, 2018

_____

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Monteil Hyland was a passenger in a car owned by Kimberly Perkins and driven by Miquasha Smith—who, at age 16, was not lawfully behind the wheel when she smashed the car at 12:46 a.m. one Saturday into two parked vehicles, seriously injuring Hyland. Smith has been convicted of aggravated reckless driving. Neither Smith nor her parents had auto insurance. But Perkins had a policy of insurance with Liberty Mutual. It cov-

ered her family, including her daughter Michiah Risby, plus anyone else driving the car with the family's permission. Smith told Liberty Mutual that Risby gave her the car's keys during a party; Risby denied doing that and said that she had given the keys to "Rob," who was never identified.

The police reported that Smith had told many incompatible stories about the events. Liberty Mutual believed its insured, Risby, and when Shannon Hyland (Monteil's mother, acting as his next friend) sued Smith it told Shannon's lawyer that it would not provide a defense or indemnity. (From now on, all references to "Hyland" are to Shannon Hyland, the plaintiff in both the state and federal suits.) Eventually Smith defaulted, and a state court entered a judgment for about $4.6 million. Smith assigned to Hyland whatever claim she had against Liberty Mutual. In this suit under the diversity jurisdiction, the district court concluded that Liberty Mutual's failure either to defend Smith or to seek a declaratory judgment of non-coverage violated Illinois law, making it liable for the entire tort judgment, even though the policy provided only $25,000 per person in coverage. 2017 U.S. Dist. LEXIS 124374 (C.D. Ill. Aug. 7, 2017). Liberty Mutual now concedes that it should have defended Smith while reserving a right to decline indemnity, but it contends that its liability cannot exceed the policy's cap.

Appellate jurisdiction is the first problem we must address. The district court entered this judgment:

> IT IS ORDERED AND ADJUDGED that the Plaintiff, Shannon Hyland's, Motion for Summary Judgment [19] is GRANTED in full. The Defendant, Liberty Mutual Fire Insurance Co.'s, Motion for Partial Summary Judgment on Damages [20] is DENIED. Judgment is entered in favor of the Plaintiff and against the Defendant. Case closed.

A judgment providing that "[j]udgment is entered" is circular. Judgments under Fed. R. Civ. P. 58 must provide the relief to which the prevailing party is entitled. See, e.g., *Cooke v. Jackson National Life Insurance Co.*, 882 F.3d 630 (7th Cir. 2018) (collecting authority). This document does not do so. Judgments must not recite the pleadings and other papers that led to the decision. See Fed. R. Civ. P. 54(a). So this judgment omits what must be included and includes what must be omitted.

We dismissed the appeal in *Cooke*, where a similar document had been entered, because the district judge had yet to decide how much the defendant must pay. In this case the judge's opinion contains the principal amount ($4,594,933.85) plus a formula (9% per annum) for determining interest. The judge called this post-judgment interest, 2017 U.S. Dist. LEXIS 124374 at *35, by which he apparently meant post the *state* judgment of July 28, 2014. The process of adding interest should be sufficiently mechanical that the parties can agree on what Liberty Mutual owes under the district court's decision.

The judge's opinion and the "Case closed" line in the judgment show that the district court is done with this litigation. This makes the decision appealable notwithstanding the lack of a judgment conforming to Rules 54(a) and 58. *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978), permits an appeal when the case is over but the court has failed to enter a proper judgment. So we have jurisdiction—but once again we urge district courts to comply with these rules. "Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves." *Hollingsworth v. Perry*, 558 U.S. 183, 184 (2010).

Having appellate jurisdiction, we now must ask whether the district court had subject-matter jurisdiction, a question that the judge and the parties alike ignored. Jurisdiction depends on diversity of citizenship, and until oral argument of this appeal everyone had assumed that the citizenships of Monteil Hyland (Illinois) and Liberty Mutual (Massachusetts and Wisconsin) were all that mattered. (Shannon Hyland's citizenship is irrelevant under 28 U.S.C. §1332(c)(2).) But 28 U.S.C. §1332(c)(1) contains a special rule for suits against insurers:

> in any direct action against the insurer of a policy or contract of liability insurance … to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—
>
> > (A) every State and foreign state of which the insured is a citizen;
> >
> > (B) every State and foreign state by which the insurer has been incorporated; and
> >
> > (C) the State or foreign state where the insurer has its principal place of business[.]

Perkins, Risby, and Smith, all arguably among the insureds, have not been joined as defendants, and as all three appear to be citizens of Illinois complete diversity is missing if this suit is a "direct action against the insurer" within the scope of paragraph (c)(1).

Because Liberty Mutual is the only defendant, and Hyland seeks money directly from it, it is tempting to call this suit a "direct action" and order its dismissal. But because the original state suit named as the defendant Smith, who might have called on Liberty Mutual for defense and indemnity (though she never did), things are not so easy. Hyland sues as Smith's assignee, and a dispute between Smith and Liber-

ty Mutual about its obligations to Smith would not be a direct action as insurance law uses that term.

In 1964, when this part of paragraph (c)(1) was enacted, two states (Louisiana and Wisconsin) allowed what they called "direct actions" against insurers. These states permitted people who sought damages to sue the alleged wrongdoers' insurers, bypassing the need to get a judgment against the supposed tortfeasor. The other 48 states insisted that plaintiffs sue the supposed wrongdoers. See Donald T. Weckstein, *The 1964 Diversity Amendment: Congressional Indirect Action Against State "Direct Action" Laws*, 1965 Wis. L. Rev. 268, 269–70. Some permitted plaintiffs to add insurers as additional defendants, while other states not only forbade this but also prohibited juries from learning whether a defendant had insurance. See Steven Plitt, *et al.*, 7A *Couch on Insurance* §104:13 (3d ed. 2013).

Justice Frankfurter was among those who noticed that the approach taken in Louisiana and Wisconsin allowed suit against an insurer under the diversity jurisdiction, even though both the injured party and the asserted injurer were citizens of the same state. He called for a legislative fix. See *Lumbermen's Mutual Casualty Co. v. Elbert*, 348 U.S. 48, 56 (1954) (concurring opinion). The Wright and Miller treatise is among many sources understanding the enactment of paragraph (c)(1) as a response to that suggestion. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13F *Federal Practice & Procedure* §3629 (3d ed. 2009).

As far as we have been able to find, in 1964 no one knowledgeable about insurance law would have used the phrase "direct action" to mean anything other than a suit, by the purported victim of a tort, that omitted the supposed

tortfeasor as a defendant. It is always possible that legislators and the President used the phrase "direct action" more colloquially to include every suit in which an insurance company is the only defendant, but no contemporaneous evidence supports that reading.

Since 1964 thousands of suits in which an insurer is the sole defendant—often suits among insurers seeking to allocate liability between primary and excess layers of coverage—have been adjudicated without anyone thinking the practice incompatible with paragraph (c)(1). Many decisions hold that suits based on the insurer's liability for its own conduct are not "direct actions" that fall under §1332(c)(1). See, e.g., *Velez v. Crown Life Insurance Co.*, 599 F.2d 471, 473 (1st Cir. 1979); *Rosa v. Allstate Insurance Co.*, 981 F.2d 669, 674–75 (2d Cir. 1992); *Beckham v. Safeco Insurance Co.*, 691 F.2d 898, 902 (9th Cir. 1982).

Surprisingly, however, only one precedential appellate decision has addressed the question whether a suit following assignment of an insured's claim against the insurer is a statutory "direct action." *Kong v. Allied Professional Insurance Co.*, 750 F.3d 1295, 1299–1301 (11th Cir. 2014), holds that it is not. We agree with both the reasoning and the conclusion of that decision. Because Hyland obtained a judgment against Smith and sues only as her assignee, this suit is unaffected by paragraph (c)(1). Complete diversity of citizenship exists, and the amount in controversy comfortably exceeds $75,000.

Although the *controversy* exceeds $75,000, the *judgment* should not have exceeded $25,000. That's the maximum Liberty Mutual promised to pay and all Smith lost when the insurer declined to defend or indemnify.

The district court gave two reasons for awarding Hyland more than the policy limit. One is that, under Illinois law, an insurer that fails to defend or seek a declaratory judgment is estopped to assert any policy defense. 2017 U.S. Dist. LEXIS 124374 at *18–25. Relying principally on *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469 (1981), the district court saw the maximum indemnity as just another defense that the insurer cannot assert. The second theory is that any damages proximately caused by an insurer's neglect are recoverable, without regard to the policy limit. 2017 U.S. Dist. LEXIS 124374 at *25–35. Here the court relied principally on *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388 (1982), and *Delatorre v. Safeway Insurance Co.*, 2013 IL App (1st) 120852. In this court Hyland disclaims the estoppel theory, recognizing that *Clemmons* has nothing to say about the circumstances under which a judgment may exceed the policy's limit. But Hyland defends the proximate-cause approach.

Liberty Mutual insists that Illinois law limits damages to the policy limit, plus a maximum of $60,000 extra if the plaintiff shows that the refusal to defend or indemnify arose from bad faith. See 215 ILCS 5/155. It quotes this passage from *Conway*: a "mere failure to defend does not, in the absence of bad faith, render the insurer liable for [the] amount of the judgment in excess of the policy limits." 92 Ill. 2d at 397. As Liberty Mutual sees things, bad faith and injury proximately caused by the insurer's conduct are both necessary for a judgment to exceed the policy limit; proof of one but not the other won't do. And the insurer adds that Hyland has never alleged—and the district judge did not find—that it acted in bad faith. Smith was neither a named insured nor a member of Perkins's family, and Hyland's state-court complaint did not allege that Smith had Risby's permission

to drive the car. Because an insurer's responsibilities under Illinois law depend on whether the complaint as drafted arguably comes within the policy's coverage, see *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991), it would not be possible to say that an insurer displays bad faith by not defending when the complaint omits a fact (Risby's consent) essential to the policy's coverage. What's more, Smith never asked Liberty Mutual to defend her. If Liberty Mutual is right that bad faith (or some equivalent, such as fraud) is essential to any award exceeding a policy's limit, then recovery is capped at $25,000.

Hyland observes that *Conway* said that "damages for a breach of the duty to defend are … measured by the consequences proximately caused by the breach." 92 Ill. 2d at 397–98. This language does not directly address the insurer's contention that both bad faith and proximate cause are essential. Liberty Mutual maintains that *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), reinforces its view that Illinois requires bad faith *plus* proximate cause. For her part, Hyland does not so much as cite *Cramer*.

We are reluctant to get into this dispute about the meaning of Illinois insurance law, for we lack the remit to supply an authoritative answer. It is enough for current purposes to say that, even if proximate cause by itself suffices, Hyland has not shown how the insurer's conduct could have caused Smith any loss exceeding $25,000—and recall that Hyland is Smith's assignee, so only Smith's injury matters.

The best situation for Smith would have been Liberty Mutual's provision of a defense lawyer plus the tender of the policy limit toward a settlement or judgment. Then Smith would have been at least $25,000 to the good. A tender of

cash would have been unlikely compared with a reservation of rights to decline indemnity later, but let us make conditions as favorable to Smith as they could be.

The provision of a lawyer to defend Smith would have been valuable to her, independent of a policy-limit tender, only if a vigorous defense might have defeated Hyland's claim or at least held damages under $4.6 million. Yet Hyland has not argued in this court—and the district judge did not find—that either outcome was plausible. Smith had a restricted license, see 625 ILCS 5/6-113, yet was behind the wheel after the 11 p.m. curfew to which Illinois subjects 16-year-old drivers. 625 ILCS 5/6-110(a-1). Smith had too many passengers (the limit is one person under 20, 625 ILCS 5/6-107(g)), crashed into two parked cars at high speed, and was criminally convicted for her behavior. Smith's liability was too clear for argument; counsel could not have hoped to defeat Hyland's suit. There was no difference between what counsel could have achieved and what actually happened (a default judgment when Smith did not defend herself).

As for damages: the state judge awarded Hyland the amount that she proved after the default was declared. Hyland has not argued that she asked for too much and pulled the wool over the state judge's eyes. She's in no position to contend that Liberty Mutual must pay her $4.6 million precisely because that sum represents more money than her entitlement—and she does not say anything of the sort. Nor does she offer any alternative. She does not contend, for example, that a vigorous defense could have held damages to, say, $2 million, and that $2.6 million (the $4.6 million awarded less $2 million that should have been awarded) thus is the loss, from Smith's perspective, proximately caused by the

lack of a defense. Instead Hyland wants the whole $4.6 million, which is proper only if it is the *right* judgment—and thus not proximately caused by the absence of a lawyer dispatched by Liberty Mutual to defend Smith.

If Smith had a plausible defense, either to liability or to the amount of Hyland's claim, then the insurer's failure to send a lawyer to help Smith make those arguments could be seen as a proximate cause of the state-court judgment. But some judgment against Smith was inevitable and the amount of the judgment must be taken as justified. Hyland has not argued otherwise. The maximum loss caused by the failure to defend thus is $25,000, and the award in this suit cannot exceed that sum.

Liberty Mutual is not satisfied with this conclusion. It also maintains that it does not owe interest on even the $25,000. That's wrong. Illinois provides for post-judgment interest at 9% per annum. 735 ILCS 5/2-1303. The district judge found that Liberty Mutual should have paid the judgment against Smith in July 2014, and Liberty Mutual does not contest that decision to the extent that the principal obligation is capped at $25,000. Thus Smith's substantive entitlement, as a matter of Illinois law, is $25,000 plus interest from July 2014. This is what Hyland now holds by assignment. That the insurer later offered to pay $25,000 is irrelevant; §5/2-1303 provides that interest stops only with tender of payment. (Liberty Mutual's reliance on the policy's language does not help it, because the policy limits interest only in suits that Liberty Mutual defended.) And Liberty Mutual does not contend that interest after the date of the federal judgment should run at the federal post-judgment rate rather than the state post-judgment rate; we do not decide

whether a change from one rate to the other would be appropriate.

The judgment is vacated, and the case is remanded for the entry of a judgment for $25,000 plus interest at 9% per annum from July 28, 2014, until the date of payment.