In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――――

No. 13-3481

MICHELLE KNIGHT and JEFFREY BARTH,

*Plaintiffs-Appellants*,

*v.*

ENBRIDGE PIPELINES (FSP) L.L.C. and CCPS TRANSPORTATION, LLC,

*Defendants-Appellees*.

―――――――――――

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-1244 — **James E. Shadid**, *Chief Judge*.

―――――――――――

ARGUED APRIL 10, 2014 — DECIDED JULY 16, 2014

―――――――――――

Before CUDAHY and EASTERBROOK, *Circuit Judges*, and LAWRENCE, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. In 1952 the owner of some land in Illinois granted a pipeline operator an easement for two pipelines across the parcel. The first was built immediately; the second, if built at all, had to be within 10 feet of the

―――――――――――

[*] Of the Southern District of Indiana, sitting by designation.

first. The operator promised that the land would remain farmable. (The contract says that any pipeline must be "buried to such depth as will not interfere with such cultivation".) The current suit is between successors to the parties who made this bargain. We call them the Owner (of the land) and the Operator (of the pipeline), using the singular for simplicity although two parties are on each side.

In 2012 the Operator notified the Owner that it planned to build a second pipeline. The Owner responded with this quiet-title suit under Illinois law. It is in federal court under the diversity jurisdiction. The Owner asked the court to declare that the Operator has no right to build a second pipeline—either because the right to do so has expired or because another pipeline would violate the farmability condition of the 1952 contract. The Operator replied that the right to build a pipeline has no time limit and that federal law, in particular 49 U.S.C. §60104(c), preempts enforcement of the farmability condition. The district court agreed with both of these arguments and dismissed the suit.

Meanwhile a second pipeline has been built. It is located not 10 but 50 feet from the first and so could not be constructed under the easement. The Operator used eminent domain to obtain the rights needed to construct the second pipeline. This does not make the controversy moot, however, because the Owner anticipates the construction of a third pipeline that would be within 10 feet of the first. Once a utility creates a transportation corridor, more construction may follow. A quiet-title suit is live as long as there is a real contest. The Operator continues to assert a right to build another pipeline within 10 feet of the first, the Owner denies that this right exists, and the existence of competing claims

to real estate means that the controversy is real. The value of the land will rise if the Owner prevails, while the value of the Operator's interest will rise if it prevails.

But the fact that no construction is in prospect does mean that the district court acted prematurely in resolving the Operator's defense under §60104(c). The Owner's assertion that a third pipeline would be incompatible with farming the surface is just speculation. Until the details of a third pipeline's construction and operation are known, it is not possible to determine what effect it would have on the land's agricultural use. The Operator promised to leave the surface farmable. Failure to keep that promise could be addressed under the law of contract. Only if a third pipeline prevents using the land for agriculture would it be necessary (or for that matter prudent) to determine whether §60104(c) gives the Operator a federal right to destroy more of the land's value than it paid for in 1952—and, if it does, whether the Owner would be entitled to just compensation for a taking. The Supreme Court summarized in *Susan B. Anthony List v. Driehaus*, No. 13–193 (U.S. June 16, 2014), how close and probable a loss must be to create a justiciable controversy. The potential dispute about the effect of §60104(c) on a third pipeline is well short of what the Court requires.

What remains is the Owner's contention that the Operator's right to build a new pipeline within 10 feet of the first has expired. The Owner characterizes the right to build another pipeline as an "option" whose unlimited duration violates the Rule Against Perpetuities. The Operator characterizes the right to build a further pipeline as a part of an easement granted in 1952. If there is no option, the Rule Against Perpetuities is irrelevant.

What can be said for the Owner's position is that, if the Operator builds another pipeline, it must pay the Owner $68. That could be characterized as an option's strike price, though maybe it is just (slight) compensation for the inconvenience caused by digging and filling in a new trench. What can be said for the Operator's position is that the 1952 document—which is captioned "Right of Way", the language of easement rather than option—declares that it is effective when signed and "hereby grants" the Operator's interest. The specific language dealing with the additional pipeline provides that the Owner "gives and grants unto [the Operator] the right of way to construct and operate" a second pipe within 10 feet of the first. That's the language of an immediate grant, not of an option promising to grant something in the future if a condition is satisfied.

The district court concluded that the Operator has the better of this exchange. Our task in diversity litigation is to predict how the Supreme Court of Illinois would answer the question. Contracts such as this must be common. We asked counsel for the Owner whether any Illinois court, ever, had characterized a contract of this kind as an option subject to the Rule Against Perpetuities. Counsel answered "no," and if there is no support for the Owner's position in Illinois case law the game is up. (The Owner does not rely on a statute or any gloss such as one of the ALI's Restatements.)

Counsel asserted at oral argument that *other* states have applied the Rule Against Perpetuities to transactions similar to this one, and he asked us to predict that Illinois would agree if given the chance. What a peculiar thing to say. The Owner could have given the state judiciary that chance but filed in federal court instead. We take state law as it is rather

than predicting novel developments. See *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010).

And *what* other states deem similar transactions to be options? The Owner's opening brief does not cite a single case decided outside Illinois. The reply brief cites a few non-Illinois cases, but only to distinguish them, as all tend to support the Operator's position. We have not gone looking on our own. An appellant must develop an argument rather than depend on the court of appeals to create one.

We have no reason to think that Illinois would call the 1952 contract an option or apply the Rule Against Perpetuities. The district court therefore properly denied the Owner's request to quiet title in its favor. That portion of the judgment is affirmed. The remainder of the judgment is vacated, and the case is remanded with instructions to dismiss the farmability aspect of the case for want of a justiciable controversy.