In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1913

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

TONI L. DUGAN and JAMES R. DUGAN,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-01205-MJR-SCW — **Michael J. Reagan**, *Chief Judge.*

ARGUED NOVEMBER 5, 2014 — DECIDED JULY 21, 2015

Before BAUER, ROVNER, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* At the heart of this diversity action is
an automobile insurance policy that plaintiff-appellee, Nation-
wide Agribusiness Insurance Company, issued to defendants-
appellants, Toni L. Dugan and James R. Dugan. The parties
filed cross-motions for summary judgment to resolve a dispute
as to Nationwide's underinsured motorist coverage obligations
under the policy. The district court granted Nationwide's

motion for summary judgment and denied the Dugans' cross-motion, holding that Nationwide did not owe the Dugans underinsured motorist coverage. The Dugans appeal. For the reasons that follow, we affirm.

## I. BACKGROUND

The facts are not in dispute. In late December 2010, Toni Dugan was involved in an automobile accident with a vehicle owned by Chelsea Rainey. The Dugans claimed upwards of $200,000 in damages as a result of the collision. Rainey's insurer, American Family Mutual Insurance Company, offered $100,000 (the limit under Rainey's policy) to Toni Dugan and her husband James Dugan, who claimed loss of consortium due to his wife's injuries, to settle their claims. The Dugans accepted the settlement.

The Dugans then sought additional recovery from Nationwide pursuant to the underinsured motorist provisions of their Nationwide policy. That policy insured four vehicles, including the vehicle Toni Dugan was driving at the time of the accident, and provided underinsured motorist coverage limits of $100,000 per person and $300,000 per accident for each of the four covered vehicles. The policy declarations page, reproduced below, lists each of the four covered vehicles separately along with the separate underinsured motorist limit applicable to each vehicle and the separate premium charged for each vehicle.

COVERAGE AND LIMITS OF LIABILITY (In Dollars)

Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY | | PROPERTY DAMAGE | | UNDERINSURED MOTORISTS | |
|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | *** | EACH PERSON | EACH ACCIDENT |
| 2 | 100 000 | 300 000 | 100 000 | * | 100 000 | 300 000 |
| 5 | 100 000 | 300 000 | 100 000 | * | 100 000 | 300 000 |
| 6 | 100 000 | 300 000 | 100 000 | * | 100 000 | 300 000 |
| 4 | 100 000 | 300 000 | 100 000 | * | 100 000 | 300 000 |

PREMIUMS (In Dollars)

| VEHICLE | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | *** | UNDER-INSURED MOTORISTS |
|---|---|---|---|---|---|
| 2 | 297 28 | 198 78 | 27 06 | * | 19 72 |
| 5 | 234 16 | 169 54 | 40 50 | * | 19 72 |
| 6 | 234 16 | 169 54 | 40 50 | * | 19 72 |
| 4 | 274 34 | 176 42 | 39 06 | * | 19 72 |

The Dugans made a demand on Nationwide for the payment of $400,000, the aggregate limit of the four under-insured motorist coverage limits listed on the declarations page. Nationwide denied payment on the ground that express language in the Dugans' policy limited their recovery to $100,000, less the $100,000 payment that they received from American Family.

In January 2013, Nationwide commenced this action, seeking a declaratory judgment that it owed no underinsured motorist coverage to the Dugans. The Dugans counterclaimed, seeking a declaratory judgment as to Nationwide's underinsured motorist coverage obligations. The parties stipulated to the pertinent facts and filed cross-motions for summary judgment.

Nationwide argued that anti-stacking language in the policy, which we set forth in our discussion, unambiguously limited the Dugans' recovery to $100,000—the limit of liability for a single vehicle. So, after setting off the $100,000 American Family payment from this limit, Nationwide claimed that it did not owe the Dugans underinsured motorist coverage. Nationwide also argued that, even if the policy permitted stacking, Illinois precedent calls for the $100,000 American Family payment to be setoff against each $100,000 limit of liability prior to stacking, resulting in no underinsured motorist coverage.

The Dugans contended that, because the policy's anti-stacking language was ambiguous, they were entitled to aggregate, or "stack," the underinsured motorist limits applicable to each of their four covered vehicles, for an aggregate coverage limit of $400,000. The Dugans conceded that the policy's provisions and Illinois law permit Nationwide to setoff the $100,000 American Family payment from its underinsured motorist coverage obligation, but argued that Nationwide was entitled to apply this setoff only a single time against the policy's aggregate limit, post-stacking. Accordingly, the Dugans claimed that Nationwide owed them

$300,000 in underinsured motorist coverage—the aggregate, or "stacked," limit ($400,000) less the setoff amount ($100,000).

The district court determined it could dispose of the parties' cross-motions without deciding whether the anti-stacking language in the policy permits or prohibits stacking. The court treated each of the four coverage limits listed on the policy declarations page as a "separate, stackable policy," and held that, even if the policy permitted stacking, Illinois law entitles Nationwide to apply its setoff—the $100,000 payment that the Dugans received from American Family—four times, once against each "separate, stackable policy" limit, thereby exhausting Nationwide's underinsured motorist coverage obligation. Accordingly, the district court granted Nationwide's motion for summary judgment and denied the Dugans' cross-motion. This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*. As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide the issues presented here.[1] *Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 677 (7th Cir. 2014). Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently. *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997).

---

[1] The parties agree that Illinois law governs this dispute.

On appeal, the Dugans contend that the district court erred in interpreting Illinois law as permitting Nationwide to apply its setoff four times, once against each coverage limit, as opposed to a single time against the total policy limit. We decline to decide that question of state law. Instead, we affirm on the alternative ground that the policy unambiguously prohibits stacking. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013) ("We may affirm the grant of summary judgment on 'any alternative basis found in the record as long as that basis was adequately considered by the district court and the nonmoving party had an opportunity to contest it.'") (quoting *Best v. City of Portland*, 554 F.3d 698, 702 (7th Cir. 2009)). The parties acknowledge that this issue—whether the policy prohibits or permits stacking—was fully briefed in the parties' cross-motions for summary judgment below, and we believe it presents a more direct and secure path to affirmance.

Whether an insurance policy prohibits or permits stacking is a legal issue. *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies. *Id.* "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Hobbs*, 823 N.E.2d at 564. The Illinois Supreme Court "has determined that antistacking clauses in general do not contravene public policy," *id.*, and the Dugans do not contest the anti-stacking provisions at issue in this case on public policy grounds. Whether an ambiguity exists turns on whether the policy language is susceptible to more than one reasonable

interpretation. *Id.* Although "creative possibilities" may be suggested, only reasonable interpretations will be considered and we will not strain to find an ambiguity where none exists. *Id.* In determining whether an ambiguity exists, all the provisions of the contract should be read together and not in isolation. *Glidden v. Farmers Auto. Ins. Ass'n*, 312 N.E.2d 247, 250 (Ill. 1974). If an ambiguity exists, it must be resolved in favor of the insured and in favor of coverage. *Hobbs*, 823 N.E.2d at 564.

Nationwide identifies two provisions in the policy issued to the Dugans which it argues unambiguously prohibit stacking of underinsured motorist coverage. The first anti-stacking provision identified by Nationwide reads in relevant part:

LIMIT OF LIABILITY

A[.] The limit of liability shown in the [d]eclarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages[,] including damages for care[,] loss of services[,] or death arising out of bodily injury sustained by any one person in any one accident[.] …

This is the most we will pay regardless of the number of[:]

1[.] Insureds[;]

2[.] Claims made[;]

3[.] Vehicles or premiums shown in the [d]eclarations[;] or

4[.] Vehicles involved in the accident.

As previously mentioned, the "[d]eclarations" referenced in the "Limit of Liability" provision quoted above, lists each of the Dugans four covered vehicles separately along with the separate underinsured motorist limit applicable to each vehicle and the separate premium charged for each vehicle.

The Dugans contend that, although the anti-stacking provision may appear unambiguous when read in isolation, the clause is rendered ambiguous when read in conjunction with the declarations page. They insist that a long line of Illinois authority dictates that, where the anti-stacking provision refers to the limit of liability listed on the declarations page as the maximum the insurer will pay, and the declarations page lists separate underinsured motorist limits for each of the covered vehicles, the anti-stacking provision is ambiguous, and stacking is permitted. We agree. Three cases in particular, and the Illinois Appellate Courts' subsequent treatment of these three cases, convince us that the Illinois Supreme Court would consider the "Limit of Liability" provision to be ambiguous.

The seminal case in the interpretation of anti-stacking clauses is *Bruder v. Country Mutual Ins. Co.*, 620 N.E.2d 355 (Ill. 1993). In what has now become known as the "*Bruder* dicta," the Illinois Supreme Court stated that "[i]t would not be difficult to find an ambiguity" where an anti-stacking provision ties the limit of liability to the limit shown on the declarations page, and the declarations page lists multiple vehicles along with the separate coverage limit applicable to each vehicle and the separate premium charged for each vehicle. *Id.* at 362. The court noted that, in such a case, it is "reasonable to assume that the parties intended" that, in return for each

premium paid, the coverage limit corresponding to each premium may be stacked, regardless of language indicating otherwise in the policy. *Id.* Then, in *Yates v. Farmers Auto. Ins. Ass'n*, 724 N.E.2d 1042 (Ill. App. Ct. 2000), the Illinois Appellate Court faced the situation contemplated by the *Bruder* dicta. The *Yates* court held that the "Limit of Liability" provision, which was nearly identical to the provision at issue here, was rendered ambiguous when read in conjunction with the declarations page, which listed multiple vehicles along with separate coverage limits and separate premiums for each vehicle. *Id.* at 1044–45. Five years later, in *Hobbs*, the Illinois Supreme Court reaffirmed its commitment to *Bruder*'s reasoning and the *Bruder* dicta. *See Hobbs*, 823 N.E.2d at 566–69. The court also approved the Illinois Appellate Court's decision in *Yates*, finding that, "[u]nder *Bruder*, the policy at issue in *Yates* was ambiguous." *Id.* at 569. In reaching this conclusion, the court explained:

> The declarations page in *Yates* … listed the underinsured-motorist limits twice– once for each of the two covered vehicles. Although the appellate court in the instant case [*Hobbs*] found this factual distinction immaterial, we do not. As noted above in our discussion of *Bruder*, where the antistacking clause limits liability to the limit shown on the declarations page, and the declarations page lists the limit of liability twice, it would not be difficult to find an ambiguity. *Id*.

Since *Hobbs* was decided, every Illinois Appellate district that has faced the issue presented in the case at bar has held, in line with *Bruder*'s dicta and *Hobbs*' discussion of the *Bruder*

dicta, that an anti-stacking provision, containing language similar to the provision at issue here, which refers to the limit of liability shown on the policy declarations page, is rendered ambiguous when the declarations page lists multiple limits. *See Bowers v. General Cas. Ins. Co.*, 20 N.E.2d 843, 848 (Ill. App. Ct. 2014) (3d District); *Progressive Premier Ins. Co. v. Kocher*, 932 N.E.2d 1094, 1102 (Ill. App. Ct. 2010) (5th District); *Johnson v. Davis*, 883 N.E.2d 521, 529 (Ill. App. Ct. 2007) (5th District); *McElmeel v. Safeco Ins. Co. of Am.*, 851 N.E.2d 99, 103 (Ill. App. Ct. 2006) (1st District).

Nationwide argues that our decision in *Grinnell Select Ins. Co. v. Baker*, 362 F.3d 1005 (7th Cir. 2004), requires that we deviate from this mass of Illinois authority. *Grinnell*, however, is distinguishable from the instant case in a way that the Illinois Supreme Court in *Bruder* and *Hobbs* considered material—the declarations page at issue in *Grinnell* listed the underinsured motorist coverage limit only one time. *See Grinnell Select Ins. Co. v. Baker*, No. 4:02-cv-04090, at *3 (S.D. Ill. May 29, 2003) (setting out the declarations page at issue in *Grinnell*); *Hobbs*, 823 N.E.2d at 566, 569; *Bruder*, 620 N.E.2d at 362; *see also Johnson*, 883 N.E.2d 608–609 ("The distinction between listing the limits of liability once and listing them more than once was crucial to our supreme court's determination in *Hobbs* … ."). Simply stated, the court in *Grinnell* did not face the issue presented in this appeal. For this reason, we reject Nationwide's argument and, in accordance with our duty as a federal court sitting in diversity, decline to deviate from the Illinois Supreme Court's dicta in *Bruder*, its reaffirmation of the *Bruder* dicta in *Hobbs*, and what the Illinois Appellate Courts have unanimously said on the issue post-*Hobbs*.

Accordingly, the "Limit of Liability" clause is of no help to Nationwide.

The second provision that Nationwide points to as unambiguously prohibiting stacking reads, in relevant part, as follows:

> OTHER INSURANCE
>
> If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage[:]
>
> 1[.] Any recovery for damages under all such policies or provisions of coverage may equal[,] but not exceed[,] the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis[.]
>
> 2[.] Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis[.]
>
> 3[.] If the coverage under this policy is provided[:]
>
> > a[.] On a primary basis we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis[.] …
> >
> > b[.] On an excess basis we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis[.] …

Nationwide argues that the introductory sentence and clause 1, read in tandem, unambiguously limit coverage to "the highest applicable limit for any one vehicle,"—here, $100,000.

We agree; the "Other Insurance" provision, when read with the policy as a whole, unambiguously bars stacking.

As an initial matter, we note that the "Other Insurance" provision's anti-stacking language resembles the language of the section of the Illinois Insurance Code that expressly authorizes anti-stacking provisions in motor vehicle insurance policies. *See* 215 ILCS 5/143a–2(5). The Illinois Insurance Code states:

> Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance. *Id.*

The "Other Insurance" provision, by mirroring the language used in this section of the Illinois Insurance Code, admits a clear anti-stacking function. The provision applies whenever there is "other applicable underinsured motorists coverage available under one or more policies *or provisions of coverage.*" And, when applicable, the provision operates to limit recovery to "the highest applicable limit for any one vehicle under any insurance providing coverage." Here, the Dugans seek to stack the underinsured motorist coverage limits provided for each of their four covered vehicles. In other words, the Dugans claim that they are entitled to recover not

only under the provision of coverage for the vehicle Toni Dugan was driving at the time of the accident, but also under the provisions of coverage for their three covered vehicles which were not involved in the accident. The "Other Insurance" provision, however, unambiguously states that in such a situation—where "there is other applicable underinsured motorists coverage available under one or more … provisions of coverage"—the insured's recovery "under all such … provisions of coverage may equal[,] but not exceed[,] the highest applicable limit for any one vehicle." Since the highest applicable limit for any one vehicle in this case is $100,000, the "Other Insurance" provision limits the Dugans recovery to that amount.

This conclusion is also supported by the Illinois Appellate Courts' decisions in *McElmeel* and *Willison v. Economy Fire & Cas. Co.*, 690 N.E.2d 1073 (Ill. App. Ct. 1998) (4th District). In *McElmeel,* the insured owned a policy with Safeco that covered three vehicles and provided underinsured motorist coverage for each of the three covered vehicles. 851 N.E.2d at 101. The declarations pages listed each of the three covered vehicles along with the separate underinsured motorist limit applicable to each vehicle and the separate premium charged for each vehicle. *Id.* The policy contained a "Limit of Liability" provision and an "Other Insurance" provision, both of which were nearly identical to the "Limit of Liability" and "Other Insurance" provisions at issue in this appeal. *Id.* at 102. The court first determined that the "Limit of Liability" provision did not prohibit stacking because it tied the limit of liability to the limit shown on the declarations pages that listed multiple coverage limits, one corresponding to each covered vehicle. *Id.* at 103.

The court then determined that the "Other Insurance" provision was unambiguous and that it resolved "the ambiguity in the declarations pages and the antistacking clauses that incorporate[d] them." *Id.* at 104. Accordingly, the court held that the "Other Insurance" provision, when read in conjunction with the policy as a whole, barred stacking. *Id.*

In *Willison*, the Illinois Appellate Court considered the antistacking effect of an "Other Insurance" provision that contained language virtually identical to the language of the "Other Insurance" provision at issue here. *Willison*, 690 N.E.2d at 1074. The plaintiff in that case argued that the "OTHER INSURANCE" provision did not prohibit stacking because it applied only to policies issued by different carriers, not to multiple policies issued by the same carrier. *Id.* The court disagreed, stating that the provision's language "clearly applies to any type of stacking of [underinsured motorist] coverages, whether multiple policy, multiple carrier, or multiple policy, single carrier or *multiple vehicle, single carrier*." *Id.* at 1076 (emphasis added). The court went on to hold that the "OTHER INSURANCE" provision unambiguously prohibited the plaintiff from stacking underinsured motorist coverages. *Id.* at 1076–77.

The Dugans first argue that the "Other Insurance" provision in their policy does not prohibit stacking because, as the Illinois Supreme Court stated in *Kaufmann v. Econ Fire & Cas. Co.*, 389 N.E.2d 1150, 1153 (Ill. 1979), the purpose of such provisions is to "make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company." This argument is unavailing. A number of Illinois cases, including *Menke v. Country Mut. Ins. Co.*, 401

N.E.2d 539, 541 (Ill. 1980), have held that "Other Insurance" provisions may simultaneously serve a proration function and an anti-stacking function. *See State Farm Mut. Auto. Ins. Co. v. McFadden*, 979 N.E.2d 551, 556 (Ill. App. Ct. 2012) ("the proration clause at the end of the antistacking provision does not introduce ambiguity"); *Armstrong v. State Farm Mut. Auto. Ins. Co.*, 595 N.E.2d 172, 176 (Ill. App. Ct. 1992) ("The presence of a 'proration clause' at the end of the provision does not introduce ambiguity into the clear language of the 'anti-stacking' provision."). Here, the "Other Insurance" provision's anti-stacking function is clear on its face; and it is further evidenced by the resemblance between the provision's language and the language used in Section 143a–2(5) of the Illinois Insurance Code.

The Dugans next argue that the "Other Insurance" provision should not be given intra-policy effect. They acknowledge the Illinois Appellate Court's statement in *Willison* that the "Other Insurance" provision at issue in that case, which was virtually identical to the provision at issue in this case, should be given effect in the "multiple vehicle, single carrier" context, but argue that the *Willison* court may have intended the phrase to mean a single carrier insuring multiple vehicles under multiple policies. Again, we disagree. The *Willison* court specifically included "multiple policy, single carrier" as one of the contexts in which the "Other Insurance" provision should be given effect. *Willison*, 690 N.E.2d at 1076. By also including "multiple vehicle, single carrier," we think that the *Willison* court unequivocally intended that the provision be given effect where, as here, a single policy insures multiple vehicles. *Id.* Furthermore, the Dugans' argument ignores the Illinois

Appellate Court's holding in *McElmeel*, where the court gave effect to an "Other Insurance" provision in the single policy, multiple vehicle context. Lastly, the Dugans do not indicate how the "Other Insurance" provision's reference to "one or more policies" or "*provisions of coverage*" can be read to apply to multiple policies, yet not to a single policy with multiple provisions of coverage.

The Dugans also argue that the "Other Insurance" provision does not resolve the ambiguity as to the policy's limit of liability. Even if the provision is given intra-policy effect, and Nationwide's obligation is reduced to the "highest applicable limit for any one vehicle," the Dugans argue that the provision does not answer what the "limit of liability" for a vehicle under the policy is. Not so. The declarations page plainly shows the limit of liability for each of the covered vehicles, and the "Other Insurance" provision reduces Nationwide's under-insured motorist coverage obligation to the vehicle with the highest applicable limit, which in this case is $100,000.

Finally, the Dugans argue that Nationwide's interpretation of the "Other Insurance" provision robs the "Limit of Liability" provision of any meaning. But, as previously explained, we agree with the Dugans that the Illinois Supreme Court would most likely consider the "Limit of Liability" provision to be ambiguous. From a conceptual standpoint, it is hard to see how an ambiguous clause can be robbed of meaning. At any rate, the Dugans do not direct our attention to any Illinois case in which one anti-stacking provision was rendered invalid by virtue of the fact that the policy contained another anti-stacking provision. Perhaps it would be more apt to say, as the Illinois Appellate Court said in *McElmeel*, that the "Other

Insurance" provision resolves any ambiguity occasioned by the interplay between the "Limit of Liability" provision and the declarations page. *See McElmeel*, 851 N.E.2d at 104.

Because the "Other Insurance" provision unambiguously limits the Dugans' recovery to $100,000, we hold that Nation-wide, after applying its setoff, does not owe the Dugans underinsured motorist coverage under the policy.

### III. CONCLUSION

For the foregoing reasons, the district court's decision is AFFIRMED.