2016 IL App (1st) 151924

THIRD DIVISION
March 2, 2016

No. 1-15-1924

| | | |
|---|---|---|
| GENERAL AUTO SERVICE STATION, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 13 L 792 |
| | ) | |
| MONAH CONNER GARRETT, | ) | Honorable |
| | ) | Brigid Mary McGrath, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    This breach of contract action arises from decedent Mark Garrett's breach of his personal guaranty of a commercial lease between BAH Properties, the lessor, and his company, Mark Galleries, Ltd., d/b/a Garrett Galleries, Ltd., the lessee. BAH Properties successfully litigated a forcible entry and detainer action against Mark Galleries following the latter's breach of the lease in August 2003, but took no action to collect the judgment or enforce Mark's guaranty until January 2013. By then, BAH Properties had been acquired by plaintiff General Auto Service Station, LLC.

¶ 2    Shortly after General Auto brought suit, Mark passed away, and his widow, Monah Conner Garrett, was substituted as defendant in this action. General Auto then moved for summary judgment, and Monah responded arguing that the doctrine of *laches* barred General Auto's suit, and further, that the Dead-Man's Act (735 ILCS 5/8-201 (West 2012)) operated to

exclude the affidavit of General Auto's vice president regarding the terms of the lease. The trial court denied General Auto's motion and granted Monah's cross-motion for summary judgment, dismissing General Auto's claim. We find that both defenses raised are inapplicable and, therefore, we reverse.

¶ 3                                    BACKGROUND

¶ 4         Mark Galleries and BAH Properties entered into a three-year lease beginning on August 1, 1998, for commercial property located at 1155 North State Street in Chicago. Mark, as the president of Mark Galleries, executed a personal guaranty securing "the payment of the Rent to be paid by the Lessee and the performance by the Lessee of all the terms, conditions, covenants and agreements of the lease," and promising to "pay all the Lessor's expenses, including reasonable attorney's fees, incurred by the Lessor in enforcing all obligations of the Lessee under the lease or incurred by the Lessor in enforcing this guaranty."

¶ 5         The lease was twice extended with the last term expiring July 31, 2004. Mark renewed his guaranty in connection with each extension. The terms of the "Second Acknowledgment of Continuing Guaranty" included a provision that Mark "is and shall be jointly and severally liable with Lessee under the Second Amended Lease as though he were a co-lessee under the Second Amended Lease."

¶ 6         In August 2003, the final year of the second extended lease term, Mark Galleries ceased paying rent and vacated the premises. On September 20, 2003 BAH Properties commenced a forcible entry and detainer suit against Mark Galleries, seeking possession of the property and recovery of unpaid rent.

¶ 7         On January 2, 2004, the trial court entered an *ex parte* order of possession in favor of BAH Properties. The court also entered judgment for BAH Properties in the amount of $18,250,

representing the unpaid rent from August 2003 through December 2003, and court costs of $360.10.

¶ 8       Following entry of the court's judgment, BAH Properties took possession of the property and retained a real estate brokerage firm in an effort to relet the property and mitigate its damages. However, BAH Properties was unable to locate a tenant until August 2004, after the expiration of Mark Galleries' lease term.

¶ 9       In 2011, BAH Properties merged with General Auto, and on January 23, 2013, General Auto filed suit against Mark to enforce the guaranty. General Auto sought to recover the 2004 judgment amount, along with (1) the unpaid rent from January 2004 through July 2004, (2) the pre- and post-judgment late charges, (3) interest on unpaid rent at 15% per annum, and (4) attorney fees and costs incurred in both this action and the forcible detainer action.

¶ 10      Mark's responsive pleading was due on April 11, 2013, but Mark passed away on April 4. Thereafter, Mark's widow, Monah Conner Garrett, was substituted as the defendant.

¶ 11      General Auto moved for summary judgment alleging that there was no question of fact as to Mark's liability for unpaid rent as the guarantor of the lease. Attached to General Auto's summary judgment motion was the affidavit of Jordan A. Grey, an attorney who represented BAH Properties in connection with its lease with Mark Galleries. Grey averred that he was a vice president of BAH Properties prior to its merger with General Auto and now serves as a vice president of General Auto. He has never held an equity or ownership interest in either entity. In 2008, in the process of discarding old files, Grey's law firm purged the file containing the original lease, guaranty and the two extensions between BAH Properties and Mark Galleries; however, the firm retained the file concerning the 2003 forcible detainer action, which contained copies of the lease, guaranty, and extensions. Grey averred that Mark personally delivered the

signed original lease, guaranty and extensions to him, and further stated that the documents in the 2003 file were true and correct copies of those original documents.

¶ 12    In her response to General Auto's motion, Monah asked the court to enter judgment in her favor on two grounds: first, she argued that the doctrine of *laches* barred General Auto's action to enforce this guaranty; second, she invoked the Dead-Man's Act (735 ILCS 5/8-201 (West 2012)) to bar Grey's affidavit attesting to the authenticity of the copied lease documents.

¶ 13    On May 28, 2015, the trial court entered an order denying General Auto's motion for summary judgment, and on June 5, 2015, the court granted what it deemed Monah's cross-motion for summary judgment.  The court held that while the doctrine of *laches* is traditionally available only in actions sounding in equity, it applied to the instant case because the passage of time and Mark's death impaired Monah's ability to defend against General Auto's claim.  The court further held that the Dead-Man's Act barred Grey's affidavit, as he was an officer of General Auto and therefore an interested party.

¶ 14                                ANALYSIS

¶ 15    Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2012); *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006).  In making this determination, the record materials must be viewed in the light most favorable to the nonmovant.  *Federal Insurance Co. v. Lexington Insurance Co.*, 406 Ill. App. 3d 895, 897 (2011).  We review *de novo* an order granting summary judgment.  *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003).

¶ 16    Initially, General Auto contends that the court erred in granting summary judgment in favor of Monah based on the doctrine of *laches*.  We agree.  *Laches* is an equitable doctrine that

bars an action where an unreasonable delay in bringing suit causes prejudice to the opposing party, who has taken a course of action different from what it otherwise would have taken. *Osler Institute, Inc. v. Miller*, 2015 IL App (1st) 133899, ¶ 23. It is the equitable counterpart to defenses based on the statute of limitations; statutes of limitations generally apply to actions at law, while the doctrine of *laches* applies to actions in equity. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 270 (2001).

¶ 17    To be sure, the general rule limiting the application of *laches* solely to equitable actions is no longer mechanically applied; for example, the doctrine of *laches* has been extended to "equity-like" actions, such as *mandamus*, as well as suits seeking both legal and equitable remedies. *Mo v. Hergan*, 2012 IL App (1st) 113179, ¶ 35 (collecting cases). However, a disagreement continues to exist as to whether an action solely for money damages can be subject to a *laches* defense. *Id.* (quoting *Valdovinos v. Tomita*, 394 Ill. App. 3d 14, 18 (2009)). The cases seeking money damages to which courts have extended the application of *laches* have been limited to those in which public sector employees sue their employers for backpay. See, *e.g.*, *Bill v. Board of Education of Cicero School District 99*, 351 Ill. App. 3d 47, 57 (2004); *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 771 (1994). No court has applied *laches* to a breach of contract action between private parties where the relief sought was limited to money damages. Indeed, the Seventh Circuit, applying Illinois law, expressly declined to do so. *Nature Conservancy v. Wilder Corp. of Delaware*, 656 F.3d 646, 650 (7th Cir. 2011).

¶ 18    We, too, see no reason to extend what has historically been an equitable doctrine to a claim sounding wholly in law. We have no difficulty concluding that had he lived, Mark would have been unable to invoke this defense. There is no suggestion in the record that BAH properties, or, later, General Auto, did anything to lead Mark to believe that his personal

guaranty would not be enforced. Mark's death, standing alone, does not change this analysis or give rise to a defense available to Monah that Mark himself could not have asserted.

¶ 19     Our decision finds support in *Sundance Homes*. There, our supreme court rejected the plaintiff's attempt to cloak a legal action in "the attire of equity" in order to take advantage of *laches* and avoid a statute of limitations bar. *Sundance Homes, Inc.*, 195 Ill. 2d at 270, 282. The same principle compels us to reject Monah's attempt to defend against a legal action by using an equitable tool so as to shorten the limitations period. General Auto's suit was within the 10-year statute of limitations for breach of contract actions (735 ILCS 5/13-206 (West 2012)), and thus is not barred by *laches*.

¶ 20     General Auto next challenges the trial court's ruling that the Dead-Man's Act barred Grey's affidavit attesting to the authenticity of the copies of the lease documents. The Dead-Man's Act provides, in relevant part,

> "In the trial of any action in which any party sues or defends as the representative of a deceased person *** *no adverse party or person directly interested in the action* shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***." (Emphasis added.) 735 ILCS 5/8-201 (West 2012).

The purpose of the Dead-Man's Act is to protect the decedent's estate from fraudulent claims. *Ruback v. Doss*, 347 Ill. App. 3d 808, 812 (2004) (quoting *Smith v. Haran*, 273 Ill. App. 3d 866, 875 (1995)). The Dead-Man's Act applies equally in summary judgment proceedings as in trials. *Rerack v. Lally*, 241 Ill. App. 3d 692, 694 (1992).

¶ 21     The primary basis for the trial court's determination that Grey was an adverse party was his role as an agent for General Auto. But agents of an adverse party are not disqualified as

witnesses under the Dead Man's Act. *People v. $5,608 United States Currency*, 359 Ill. App. 3d 891, 895-96 (2005) (assuming *arguendo* that detective was agent of State, he was not thereby excluded from testifying against decedent pursuant to Dead-Man's Act (citing *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.*, 61 Ill. App. 3d 119, 124-25 (1965), and *Sankey v. Interstate Dispatch, Inc.*, 339 Ill. App. 420, 428-29 (1950))). The legal definition of "party" supports this conclusion. A "party" is one who has a right to control the proceedings, to pursue a defense, to call and cross-examine witnesses, and to appeal from the decision. *Sankey*, 339 Ill. App. at 425. As General Auto's vice president, Grey has none of these rights, and so is not an "adverse party" in this litigation. See *id.* (defendant's employee was not an "adverse party" for purposes of Dead-Man's Act where employee had no right to call witnesses, control proceedings, or pursue a defense).

¶ 22        Nor is Grey directly interested in the action. A person is directly interested in an action when the judgment will result "in a direct, immediate monetary gain or loss." *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 33. But the uncontradicted evidence reveals that Grey holds no equity or ownership interest in General Auto. Thus, any judgment in favor of General Auto would benefit him indirectly, if at all.

¶ 23        Further, there is no real question regarding the authenticity of the lease and guaranty attested to by Grey. Those same documents supported BAH Properties' forcible entry and detainer action and formed the basis of the judgment against Mark Galleries. Grey's affidavit places Monah at no greater disadvantage than if the originals had been retained. Monah knows nothing of the lease and guaranty because she was not involved in the transaction. But Monah's lack of involvement in her husband's business affairs does not translate into the ability to preclude otherwise competent evidence. And because Grey was neither an adverse party nor

interested in the action on the guaranty, his affidavit was improperly excluded under the Dead-Man's Act.

¶ 24        Having determined that the trial court erred in granting summary judgment in favor of Monah, we turn to the court's denial of General Auto's motion for summary judgment. General Auto seeks reversal of this order as well, arguing that there is no question of fact as to Mark's liability based on the terms of the guaranty.

¶ 25        Ordinarily, when parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the issues as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). But "the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 26        Here, it was for the trial court in the first instance to determine whether, notwithstanding the cross-motions for summary judgment, there was nevertheless a genuine issue of material fact. However, because the trial court erroneously ruled in Monah's favor, it never considered the merits of General Auto's motion. That is, because the court determined Grey's affidavit was barred, it did not consider whether the affidavit would be sufficient to warrant judgment in General Auto's favor as a matter of law. Nor did the trial court consider whether General Auto was entitled to all the elements of damages it sought. Thus, because we believe it is appropriate for the trial court to resolve these issues in the first instance, we remand for the trial court's consideration of the merits of General Auto's motion.

¶ 27                                    CONCLUSION

¶ 28         For the reasons stated, we reverse the trial court's order granting summary judgment in favor of Monah and remand for further proceedings consistent with this order.

¶ 29         Reversed and remanded.