In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 24-2704 & 24-2817

RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND
WELFARE FUND,

*Plaintiff-Appellee,*

*v.*

CLINTON MAHONEY,

*Defendant-Appellant.*

———————

Appeals from the United States District Court for the
Central District of Illinois.
No. 19-cv-3214 — **Colleen R. Lawless**, *Judge.*

———————

ARGUED MAY 22, 2025 — DECIDED JULY 17, 2025

———————

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Clinton Mahoney was the sole member and manager of Mahoney & Associates, LLC. In that role, he signed an agreement obligating the company to contribute to the Railroad Maintenance and Industrial Health and Welfare Fund, an employee benefit fund. When the Fund was unable to collect delinquent contributions from Mahoney & Associates, it brought this suit against Mahoney in his personal

capacity. The Fund claimed that a personal liability clause in the agreement conclusively established that Mahoney had agreed to be personally bound. The district court granted summary judgment to the Fund. We reverse. While the personal liability clause is evidence that Mahoney intended to be personally bound, the fact that he signed the agreement in a representative capacity evinces a contrary intent. That is not a dispute we can resolve at summary judgment.

## I

The Railroad Maintenance and Industrial Health and Welfare Fund is an employee benefit fund governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The Fund is administered pursuant to a trust agreement, and participating employers make contributions to the Fund in accordance with the terms of their collective bargaining agreements. Mahoney & Associates, LLC, was one such employer. In a one page memorandum of agreement with the International Union of Operating Engineers, Local 150, Mahoney & Associates agreed to be bound by the terms of the Union's collective bargaining agreement and the Fund's trust agreement.

In two prior suits, the Fund attempted to collect unpaid contributions from Mahoney & Associates. But after encountering little success (and because the company had since been dissolved), the Fund brought this suit against Clinton Mahoney personally (as well as other defendants not relevant on appeal). Mahoney was the sole member and manager of Mahoney & Associates, and he signed the memorandum of agreement on behalf of the company. Although he did not sign the memorandum in his personal capacity, the trust agreement provided that officers and directors of Mahoney &

Associates "shall be personally liable for any underpayment or other pecuniary loss to the Fund" resulting from a willful violation of any requirement in the trust agreement.

Both parties moved for summary judgment, contending that there was not a genuine dispute concerning Mahoney's intent (or lack thereof) to be personally bound by the terms of the trust agreement. Relying on the personal liability clause in the trust agreement, the district court granted summary judgment to the Fund. The court also awarded the Fund attorneys' fees based on another provision of the trust agreement. Mahoney appealed.

## II

## A

Before turning to the merits, we address the Fund's argument that Mahoney's appeal is untimely. Mahoney first filed a notice of appeal on September 26, 2024, more than 30 days after the district court initially entered judgment on July 31. See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). However, the initial judgment did not comply with Federal Rule of Civil Procedure 58 because it failed to specify the relief to which the Fund was entitled. See *Hyland v. Liberty Mut. Fire Ins.*, 885 F.3d 482, 483 (7th Cir. 2018) ("Judgments under Fed. R. Civ. P. 58 must provide the relief to which the prevailing party is entitled."). Mahoney did not need to file a notice of appeal until the district court entered a judgment complying with Rule 58. *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 385–86 (1978); see also Fed. R. Civ. P. 58(c)(2).

The district court did not enter such a judgment until October 11, after Mahoney's first notice of appeal. But this atypical sequence is not an issue either. Parties seeking an appeal

can waive the procedural formalities of Rule 58 so long as the district court has rendered a final decision. *Hyland*, 885 F.3d at 484 (citing *Bankers Tr.*, 435 U.S. 381); see also 28 U.S.C. § 1291. The district court did so here on August 30 when it entered a text order specifying the monetary relief the Fund was entitled to and instructing the clerk to correct the judgment. At that point, there was nothing left for the district court to do, so its decision was final and appealable. See *Bankers Tr.*, 435 U.S. at 387–88.

Moreover, Mahoney erased any doubt about the timeliness of his appeal by filing a second notice of appeal the same day the corrected judgment was entered on the docket. Mahoney's appeal is timely, so we proceed to the merits of the parties' dispute.

B

We review a district court's decision to grant summary judgment de novo. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 876 (7th Cir. 2025). Summary judgment is warranted if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For the reasons set forth below, there is a genuine dispute concerning Mahoney's intent to be personally bound by the terms of the trust agreement.

We begin by noting that the Fund's claim against Mahoney arises under federal law, even though the Fund pleaded it as a state law claim. ERISA, 29 U.S.C. §§ 1132 & 1144(a), and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), completely preempt state law on matters related to employee benefit plans and collective bargaining agreements. See, e.g., *Beneficial Nat'l Bank v. Anderson*, 539 U.S.

1, 6–8 (2003). "When [a] federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. That is the case here. The Fund is an employee benefit plan governed by ERISA and is seeking to recover delinquent contributions, along with ancillary fees and penalties, that it says Mahoney owes under the terms of the collective bargaining and trust agreements. Such a claim arises under federal law. See, e.g., *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901–03 (7th Cir. 2018).

But because "ERISA does not contain a body of law governing contract interpretation," the statute cannot supply the rule of decision in this case. *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996). Instead, we must "fashion federal common law," consulting state law "when consistent with the policies underlying ERISA." *Id.*; see also *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457 (1957) ("[S]tate law, if compatible with the purpose of [federal law], may be resorted to in order to find the rule that will best effectuate the federal policy."). It is not so clear, though, whether we should draw on a specific state's law (here, Illinois) or general principles of contract law.

In *Sullivan*, we faced a similar question to the one presented here: whether an employer's signature on certain documents made him personally responsible for delinquent contributions to an ERISA benefit plan. 78 F.3d at 324. There, we decided as a matter of federal common law to look to Illinois law for the rule of decision. *Id.* at 326. We reasoned that because the relevant ERISA section "applies only to employers with contractual obligations that preexist (or exist

notwithstanding) ERISA[,] … the statute presumes another body of law will govern those contractual obligations in the absence of ERISA," and we looked to Illinois to provide that body of law. *Id.* Our sister circuits have taken similar approaches. See *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 35–37 (2d Cir. 1994) (applying New York law to determine personal liability under the LMRA); *Rockney v. Blohorn*, 877 F.2d 637, 643 (8th Cir. 1989) ("[A]ppropriate state contract law should apply …."). However, the Supreme Court, considering a different cause of action under ERISA, has instead consulted general principles of state law. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–12 (1989) (turning to general principles of trust law and consulting the Restatement (Second) of Trusts); see also *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 56 (1987). In Mahoney's case, though, either approach leads to the same result.

Under Illinois law, an agent is not personally bound by an agreement he signs in a representative capacity "absent evidence of contrary intent in the document." *Wottowa Ins. Agency, Inc. v. Bock*, 472 N.E.2d 411, 413 (Ill. 1984). If there is such evidence, then "an issue of fact as to the agent's intent arises, an issue for the jury to determine." *Id.* (discussing with approval the rule from *Knightsbridge Realty Partners, Ltd-75 v. Pace*, 427 N.E.2d 815 (Ill. App. Ct. 1981)). Here, the Fund concedes Mahoney signed the memorandum in his representative capacity, which indicates that he did not intend to be personally bound by the agreement. But the personal liability clause in the trust agreement evinces a contrary intent. Accordingly, there is a genuine issue of material fact as to Mahoney's intent to be personally bound, one that cannot be resolved at summary judgment.

In holding otherwise, the district court relied on *Railway Express Agency, Inc. v. Greenberg*, No. 92 C 6383, 1995 WL 753908 (N.D. Ill. Dec. 8, 1995). The court in *Greenberg* recognized the general rule that an issue of fact arises when the language of the document conflicts with the representation made by the agent's signature, but it distinguished *Bock* as involving a document that contained a single obligation purporting to bind a single entity. *Id.* at *5. When that is the case, the court reasoned, there is ambiguity concerning which entity is bound: the principal or the agent. *Id.* But the court concluded that there was not a similar ambiguity where, like in *Greenberg*, the document contains two obligations, one binding the principal and one binding the agent, such that the agent "is, by his signature, creating obligations both for [the] principal and for himself." *Id.*

Illinois appellate courts have not drawn the same distinction the district court did in *Greenberg*. See, e.g., *Cent. States, Se. & Sw. Areas, Health & Welfare Fund v. Pitman*, 383 N.E.2d 793, 794–95 (Ill. App. Ct. 1978); *Knightsbridge*, 427 N.E.2d at 817, 819; *Yellow Book Sales & Distrib. Co. v. Feldman*, 2012 IL App (1st) 120069, ¶¶ 3–7, 38–47. For example, the promissory note in *Pitman* also contained two obligations, one binding G. R. Pitman Trucking Co. and one binding its president, Pitman, "as an individual." 383 N.E.2d at 794. The court held that there was a triable issue of fact as to whether the parties intended for Pitman to be personally liable because he had only signed the note in his representative capacity. *Id.* at 795. Similarly, the purchase agreement in *Knightsbridge* contained two obligations, one binding Elmore Medical Building, Ltd., and one binding its president, Pace, in his personal capacity. 427 N.E.2d at 817. Citing *Pitman*, the *Knightsbridge* court held that there was a genuine issue of fact regarding whether Pace

intended to be personally bound given that he only signed the agreement in a representative capacity. *Id.* at 819.

On questions of state law, the "decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). No such indications exist here. In fact, the Illinois Supreme Court favorably cited *Knightsbridge* in its opinion in *Bock*. 472 N.E.2d at 413. So, looking to Illinois state law for the rule of decision, we find a genuine issue of material fact as to Mahoney's intent to be personally bound.

If instead we draw on general principles of contract law, we arrive at the same conclusion. Illinois law is consistent with the Restatement (Third) of Agency, which provides: "When an agent [here, Mahoney] acting with actual or apparent authority makes a contract on behalf of a disclosed principal [Mahoney & Associates], … the agent is not a party to the contract unless the agent and third party [the Fund] agree otherwise." Restatement (Third) of Agency § 6.01 (2006). Comment (d) to the Restatement explains that "[a]n agent is not a party to a contract if any portion of the parties' writing makes clear that the agent acts solely in a representative capacity on behalf of a disclosed principal." *Id.* cmt. (d)(1). Recall that in this case the Fund concedes Mahoney signed the memorandum in his representative capacity. But on the other hand, "[i]f a contract names both the principal and the agent, in the absence of a manifestation to the contrary the agent is not a party to the contract if the contract indicates that the agent is named only as agent." *Id.* Here, of course, the personal liability clause is a manifestation to the contrary, or, in the consonant words of the Illinois Supreme Court, "evidence of

contrary intent." *Bock*, 472 N.E.2d at 413. Further, a Restatement note emphasizes the ambiguity that the personal liability clause creates: "[a] contract may be ambiguous when an officer is designated in an individual capacity but the officer signs the contract in an expressly representative capacity." Restatement (Third) of Agency § 6.01 n.(c)(2). So under general principles of contract law, too, a genuine dispute of material fact remains.

Next, Mahoney argues that his laches defense entitles him to summary judgment. Laches is an equitable doctrine that cuts off the right to sue when a plaintiff's unreasonable delay in pursuing his claim prejudices the defendant. *Teamsters & Emps. Welfare Tr. of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002). Traditionally, the doctrine applied to suits in equity that were not subject to a statute of limitations. *Id.*; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014). It isn't usually a defense to suits seeking legal relief that are brought within the applicable statute of limitations. *Petrella*, 572 U.S. at 678; see also *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1053–55 (6th Cir. 2015) (refusing to permit a laches defense to a suit seeking delinquent contributions under ERISA because it was brought within the applicable statute of limitations).

While it is true that neither ERISA nor the LMRA contains a statute of limitations for suits seeking delinquent contributions, we have looked to state law to supply the applicable limitations period when not inconsistent with federal interests. *Cent. States, Se. & Sw. Areas Pension Fund v. Jordan*, 873 F.2d 149, 152–54 (7th Cir. 1989). Assuming that state law should supply the applicable limitations period in this case, that would suggest we should also look to state law to supply

"all related doctrines of tolling and laches." *Gorman Bros. Ready Mix*, 283 F.3d at 885–86 (Easterbrook, J., concurring in the judgment). And Illinois courts do not permit a laches defense to suits seeking damages for breach of contract. *Gen. Auto Serv. Station, LLC v. Garrett*, 2016 IL App (1st) 151924, ¶¶ 17–18; see also *Bugher v. Freightner*, 722 F.2d 1356, 1358 (7th Cir. 1983) (likening suits seeking delinquent contributions under the LMRA to suits seeking damages for breach of contract); but see *Bugher*, 722 F.2d at 1358–59 (recognizing that some suits under ERISA are equitable in nature).

However, we need not resolve these issues here because Mahoney has waived his laches defense. Despite the district court's skepticism that laches applies to this suit, on appeal Mahoney has not addressed any of the complications his defense raises. Though he argues laches in broad strokes—contending that the Fund delayed unreasonably, causing him prejudice—he elides all nuance, failing to discuss the law versus equity and statute of limitations issues. See *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Finally, after the district court granted summary judgment to the Fund, the court awarded it attorneys' fees pursuant to another provision of the trust agreement. Because we are reversing the grant of summary judgment, we also vacate the award of attorneys' fees.

REVERSED IN PART, VACATED IN PART, AND REMANDED